HERBERT W. MARSH et al.

*vs.*

GREAT NORTHERN PAPER COMPANY.

Penobscot.    Opinion July 24, 1906.

*Contract to Drive Logs.   Contract Ratified by Legislature.   Logs Lost by Negligent
    Driving.   Privity of Contract Not Essential to Maintenance of Action.   Negli-
    gence.   Proximate Cause.   Rule to Determine Proximate Cause Stated.   Close-
    ness of Casual Relation.   Natural Conditions Must be Anticipated.
    Evidence.   Private and Special Laws, 1901, c. 293, §§ 1, 2.*

Prior to 1901 by legislative charter The Penobscot Log Driving Company
    had the exclusive right and duty of driving all logs coming into the West
    Branch of the Penobscot between the head of Chesuncook Lake and the
    East Branch to any place at or above the Penobscot Boom where logs are
    usually rafted, at as early a period as practicable.   In February, 1901, it
    contracted with the defendant to drive into said boom during the driving
    season of that year all the logs which the log company should have to
    drive under its charter.   By section 1, chapter 293 of the Private and
    Special Laws of 1901 the legislature ratified and confirmed this contract,
    and power and authority necessary to carry out its terms and for its execu-
    tion was conferred upon the respective parties thereto.   The plaintiffs'
    logs formed part of the drive of 1901, and this suit is brought to recover
    damages alleged to have been sustained by the negligence of the defend-
    ant in making said drive.

*Held:* that privity of contract is not essential to the maintenance of the
    action.   By accepting the legislative act, as it did by accepting and under-
    taking to drive the logs, the defendant came under a duty to the public,
    including the plaintiffs, to drive the logs in accordance with the contract.

The duty was co-extensive with the contract, but as independent of it as if,
    instead of referring to the contract the duties of the defendant had been
    set forth in the act itself.

The defendant drove the plaintiffs' logs not only in the performance of the
    terms of its contract with the Log Driving Company, but also in the exer-
    cise of the powers conferred upon it by the state which carried along with
    them the corresponding duty to use due care and diligence in the exercise
    of those powers.

Under the terms of the report in this case upon the question of fact the
    issue is whether the evidence is sufficient to support a verdict for the
    plaintiff.

A majority of the court are of the opinion that the evidence is sufficient to support a verdict in favor of the plaintiffs' contentions and allegations that on account of the defendant's mismanagement, either through negligence or misfeasance, this drive of logs was so unnecessarily delayed that it did not arrive at its destination in season to be cared for and secured before the river froze, that as a result of this delay the logs became separately frozen into the ice of the river so that they could not be in any manner secured, that they there remained until a portion of the plaintiffs' logs were carried down river and out to sea during the December freshet of that year, and another portion of them were lost in the same manner in the freshet of the next spring.

In determining the question of proximate cause the true rule is that the injury must be the natural and probable consequence of the negligence complained of.

It is not necessary to prove that the defendant did anticipate or by the exercise of ordinary prudence should have anticipated, the precise form in which the injury resulted. It is sufficient that after the injury, it appears to have been a natural and probable consequence of the defendant's negligence.

Closeness of causal relation and not time or distance is the decisive test of proximity of cause, although in some cases time and distance may have an important bearing upon the question of causal relation. Upon the other hand it is not sufficient that the negligent act complained of may constitute one of a series of antecedent events without which the damage would not have happened, or that the negligence in question afforded only an opportunity or occasion for the injury or a mere condition of it.

The loss of the logs cannot be attributed to the magnitude of the freshets as there was evidence from which a jury would be justified in finding that the logs would have been lost, unsecured as they were, during any ordinary freshet which might happen while they were in this condition.

The early freezing of the river, in conjunction with the defendant's negligence whereby the logs were delivered much later than might or should have been, caused the plaintiffs' loss. This, however, was not an independent intervening cause, but a natural condition, the chance of the occurrence of which should have been foreseen. Unusual climatic conditions occur so frequently that in important affairs, they must be anticipated and guarded against.

On report.    Judgment for plaintiffs.

Action on the case to recover damages caused by the alleged negligence and wilful acts of the defendant corporation in so misdriving and misdelivering the plaintiffs' logs entrusted to it, in the spring and summer of 1901, to be driven, that the same went out to sea and and were lost.

The declaration in the plaintiffs' writ is as follows:    "In a plea of

the case for that whereas the said plaintiffs, to wit; on or about the 20th day of June, A. D. 1901, were the owners of a large quantity of spruce logs, to wit; 4,330,860 feet of spruce which said spruce logs were intended to be driven down from the West Branch of the Penobscot River into the Penobscot Boom in the spring and summer of 1901. And the plaintiffs aver that on or about said 20th day of June, A. D. 1901 they delivered into the custody and possession and under the management and control of the said defendant 4,330,860 feet of spruce logs in Chesuncook Lake, which said spruce logs there joined the West Branch Drive of logs, so called, from there to be driven with said West Branch Drive by the said defendant down the West Branch of the Penobscot River, to and upon the Maine Penobscot to the Penobscot Boom, their place of destination and market.

"And whereas the defendant was, by virtue of a contract entered into with the Penobscot Log Driving Co., dated the 16th day of February, A. D. 1901 and ratified by an act of the Legislature of the State of Maine, approved February 26, 1901, bound and obliged to drive and had the exclusive right and privilege to drive all logs and lumber seasonably delivered to said defendant in said Chesuncook Lake down said West Branch of the Penobscot River and to and on the main branch of the Penobscot River into said Penobscot Boom, all of which duties, obligations and responsibilities had been accepted by said defendant prior to the committing by the said defendant of the grievances hereinafter complained of by the plaintiffs.

"And the plaintiffs aver with certain privileges and obligations as to driving all logs which were intended to be driven down said West Branch of the said Penobscot River during the driving season of said year, said defendant received their said spruce logs between the head and outlet of said Chesuncook Lake and was bound thereby to properly drive said logs into the Penobscot Boom as aforesaid. And whereas the said defendant was, upon the delivery of said logs into its custody as aforesaid, in the exclusive possession, control and management of said logs and lumber for the purpose of driving them down said West Branch into the Penobscot Boom, and was bound and obliged to drive from said Chesuncook Lake all logs intended to be driven down said West Branch of said Penobscot River which

were seasonably delivered to said defendant at the head or outlet of said Chesuncook Lake during the driving season of 1901 into said Penobscot Boom. And the plaintiffs aver that on or about, to-wit, the 20th day of June, 1901, they seasonably delivered to said defendant said 4,330,860 feet of their said logs into the possession and control of the said defendant in said Chesuncook Lake, and then and there seasonably delivered the same to the defendant, and said defendant accepted said logs and the said defendant was then and there bound and obliged to take said logs and drive them to the Penobscot Boom aforesaid.

"And the plaintiffs aver that the defendant, unmindful of the plaintiffs' rights and their own obligation under and by virtue of said contract ratified by Legislature as aforesaid, although otherwise requested by the plaintiffs, did carelessly and negligently drive said plaintiffs logs so that they did not arrive at said Penobscot Boom in the year of 1901 in season to be cared for and protected from being lost by said plaintiffs. And the plaintiffs aver that, by reason of the defendant's wrongful acts as aforesaid, a large quantity of their logs, to-wit: 1,149,330 feet of the value of $15 per thousand, and all of the value of $17,239.95, were lost and went to sea, all of which loss and injury was through the wrongful acts, negligence and disregard of the duties imposed upon said defendant in the driving and caring for said logs and lumber, and all of which loss and damage was occasioned by the negligence and carelessness of the defendant in the driving of the logs of the plaintiffs without any negligence or fault or want of due care on the part of said plaintiffs.

"And the plaintiffs aver that by the negligence and wrongful acts of the said defendant many of their said logs, delivered to the defendant as aforesaid, did not enter, during the driving season of 1901, said Penobscot Boom, and none of their logs or lumber arrived at said Boom before November 13, 1901, when it was impossible for the plaintiffs, on account of the lateness of the arrival of said logs and lumber, to care for them or protect them from going out in the freshet of the following spring; all of which was known, or ought to have been known, by said defendant.

"And the plaintiffs aver that the reason, that their said logs and

lumber, delivered to the said defendant as aforesaid, did not arrive at said Boom in the driving season of 1901 earlier in the season so that said logs and lumber could have been rafted out and cared for so as not to have been carried out by the freshet of the spring, was through the fault and negligence and wrongful acts of the said defendant in not properly driving said logs as they should have done during said season.

" And the plaintiffs aver that the said defendant wrongfully, unreasonably, improperly and wilfully used water for the running of its mill at Millinocket which it should have used for the purpose of driving the plaintiffs' logs to said Penobscot boom; whereby and by reason of which wrongful, negligent and improper acts of said defendant the plaintiff lost 1,149,330 feet of their logs and lumber as aforesaid, all of which is to the damage of the plaintiffs, as they say, in the sum of twenty thousand (20,000) dollars.

" Also for that the defendant corporation during the year of 1901 had full and entire possession, management and control of all the logs and lumber, which came into the West Branch of the Penobscot River, to drive into certain booms of the Great Northern Paper Co., the defendant, in North Twin Lake and into the Penobscot Boom during said driving season of 1901, by virtue of a contract entered into with the Penobscot Log Driving Co., dated the 16th day of February A. D. 1901, which contract was ratified by an act of the Legislature of the State of Maine, approved February 26, 1901, as per Chapter 293 of the Private and Special Laws of said year.

" And the plaintiffs aver that by virtue of said contract and said act of the legislature all the duties and obligations which prior thereto had been incumbent on said Penobscot Log Driving Co. to do and perform in driving the logs and lumber of the plaintiffs out of Chesuncook Lake into the Penobscot Boom as aforesaid, became obligatory and incumbent upon said defendant to do and perform; and the plaintiffs further aver that the duties, obligations and responsibilities, which were incumbent upon said Penobscot Log Driving Co. to do and perform in the driving of the plaintiffs logs from said Chesuncook Lake to the Penobscot Boom as aforesaid, were assumed and accepted by the said defendant in the driving of their said logs.

"And the plaintiffs aver that, for the purpose of driving their said logs and lumber as aforesaid into the Penobscot Boom, the defendant corporation had the use of the anchors, headworks, booms and rigging of the Penobscot Log Driving Co., and from the time said logs and lumber left the head of Chesuncook Lake until they reached the Penobscot Boom said defendant had charge of all dams of the Penobscot Log Driving Co. and control of the West Branch water in said dams for driving purposes.

"And the plaintiffs say that they, relying upon the defendant to do its whole duty in the premises, did in the year 1901 cause to be delivered into the hands and possession and under the control and management of the said defendant a great quantity of spruce, to wit; 4,330,860 feet woods scale, all marked properly with their own marks, at the head of Chesuncook Lake and said defendant corporation then and there received and accepted said logs and took them into custody and care and under its control for the purpose of driving said logs out of the West Branch of the Penobscot River into the Penobscot Boom, so called, on the main branch of the Penobscot River.

"And the plaintiffs aver that said 4,330,860 feet of spruce were seasonably delivered into the custody and control of the said defendant, for the purpose as aforesaid, on or about to wit; the 20th day of June 1901; and the plaintiffs further say that the defendant corporation not regarding its said duty, wilfully, knowingly and negligently detained said logs in Chesuncook Lake for the purpose of using water, which should have been used in the driving of said logs, for the purpose of running its mill at Millinocket.

"And the plaintiffs aver that, from the time said logs and lumber of the West Branch Drive left the foot of North Twin Dam, the said defendant wilfully, negligently and wrongfully detained the logs and lumber of the plaintiffs, for the period of ten days, betwixt said North Twin Dam and Quakish Lake for the purpose of holding and storing and using water for its own advantage to the injury and damage of the plaintiffs; and the plaintiffs aver that on account of the negligence, carelessness and wrongful acts of the said defendant as aforesaid their said logs did not reach the Penobscot Boom until

the 13th day of November, 1901, whereby and by reason of which 1,149,330 feet of said 4,330,860 feet delivered to said defendant as aforesaid were lost and went to sea solely through the negligence, mismanagement and wrongful acts of the defendant corporation in driving their said logs as aforesaid.

" And the plaintiffs aver that if it had not been for the wrongful, negligent and wilful acts of the defendant in detaining said logs and lumber as aforesaid, and storing and using the water solely for manufacturing purposes, their said logs and lumber would have reached the Penobscot Boom by the 1st day of October, 1901, when all of their said logs, and lumber could have been rafted out and cared for by the plaintiffs.

" And the plaintiffs aver that their said logs and lumber did not reach said Penobscot Boom until the 13th day of November, 1901, and that part of them were never driven into said Boom by the said defendant; and that said logs and lumber of the plaintiffs were thus detained through the wrongful and negligent acts of the defendant in wilfully holding back the water for its own individual purposes and thereby said 1,149,330 feet of logs and lumber of the plaintiffs, of the value of $15 per thousand feet, amounting to $17,239.95 were lost and went to sea in the spring freshet, all of which loss accrued to the plaintiffs solely through the negligence, wrongful and wilful acts of the defendant in detaining their said logs and lumber by with-holding water for the defendant's use which should have been used during the driving season for the purpose of driving the logs of the plaintiffs into the Penobscot Boom in season to be rafted out and cared for by the plaintiffs, all of which loss to the plaintiffs, was through the negligent, wrongful and wilful acts of the defendant and without any negligence or want of due care on the part of the plaintiffs, all of which is to the damage of the plaintiffs, as they say, in the sum of Twenty Thousand (20,000) Dollars."

Writ dated January 14, 1903. Plea, the general issue. The action was heard at the January term, 1904, of the Supreme Judicial Court, Penobscot County. At the conclusion of the evidence, it was agreed to report the case to the Law Court with stipulations as follows: "The cause is submitted to the Law Court on report. If,

in the opinion of the court, the law and so much of the evidence as is legally admissible would sustain a verdict for the plaintiffs, the court is to award judgment for the plaintiffs for the sum of nine thousand eight hundred seventy-one dollars and thirty-one cents ($9871.31) with interest thereon from the date of the writ; otherwise judgment is to be awarded for the defendant."

All the material facts are stated in the opinion.

*Orville Dewey Baker, P. H. Gillin, J. H. Gould and Lewis A. Barker*, for plaintiffs.

*Charles F. Woodard and Louis C. Stearns*, for defendant.

SITTING: WISWELL, C. J., EMERY, WHITEHOUSE, STROUT, SAVAGE, POWERS, PEABODY, SPEAR, JJ.

POWERS, J. Action on the case reported to the Law Court with the stipulation that, if in the opinion of the court, the law and so much of the evidence as is legally admissible would sustain a verdict for the plaintiffs, the court is to award judgment for the plaintiffs for the sum of $9871.31 with interest thereon from the date of the writ; otherwise judgment is to be awarded for the defendant.

The first count of the writ alleges in substance the obligation and exclusive right of the defendant, both under the contract and its acceptance of the legislative act hereinafter named, to drive into the Penobscot Boom all the logs seasonably delivered to it in Chesuncook Lake, the seasonable delivery by the plaintiffs and the acceptance by the defendant of the plaintiffs' logs, the careless and negligent driving of the logs by the defendant and the unreasonable, improper and wilful use of water, for the purpose of running its mill at Millinocket, which it should have used for driving, so that the logs did not arrive at the Penobscot Boom in 1901 in season to be cared for and protected, by reason whereof they went to sea and were lost. The second count charges that the defendant wilfully and knowingly as well as negligently detained the logs in Chesuncook Lake and between North Twin Dam and Quakish Lake, for the purpose of storing or using water to run its mill, which should have been used during the driving season to drive the logs into Penobscot Boom in season

to be rafted out and cared for, with the same injurious results following therefrom to the plaintiffs as are set forth in the first count.

Prior to 1901, The Penobscot Log Driving Company had the exclusive right and duty of driving all logs, coming into the West Branch of the Penobscot between the head of Chesuncook Lake and the East Branch, to any place at or above the Penobscot Boom where logs are usually rafted, at as early a period as practicable. On February 16th, 1901, said Log Driving Company and the defendant entered into a contract, the parts of which material to this case are as follows:

"Party of the second part (the defendant) agrees to drive to the sorting booms of the Great Northern Paper Company in North Twin Lake and into the Penobscot Boom during the driving season of 1901 and the driving season of 1902, all the logs which the Penobscot Log Driving Company shall have to drive under its charter in said years, the drive of 1901 to be completed in 1901, and the drive of 1902 to be completed in 1902; to cause the rear of each of said drives to leave the head of Chesuncook Lake when directed so to do as hereinafter specified.

"Upon the approach of the rear of said drive to any sorting boom or booms upon the Penobscot River, in case the Company owning or controlling said booms should provide an insufficient crew of men to sort and turn by the logs arriving at the booms, party of the second part agrees that it will put on sufficient men of their own selection to drive and sort the logs so that said drive shall be delayed as little as possible; and in case of neglect of party of the second part to do so, party of second part shall be liable to party of the first part for all cost, expense or damage occasioned thereby.

"If it shall appear to the Commissioners hereinafter mentioned that said neglect and refusal of party of the second part are unreasonable and imperil the safety of the drive, they may order party of the second part to put sufficient additional men upon the work forthwith and, unless said order is at once complied with, upon notice to that effect to them given in writing by said Commissioners, the Directors of Penobscot Log Driving Company may take charge of said drive without any violation of this contract.

"Party of second part is to have the use of all anchors, head works booms, and rigging of Penobscot Log Driving Company now on hand.

"Party of second part further agrees in making said drive to take and use the steamboats of Penobscot Log Driving Company and man and run the same at its own expense and risk (excepting as to engineers.)

"F. W. Ayer, James W. Sewell and F. A. Gilbert are hereby agreed upon and appointed as a Commission, who shall fix in each year the time at which the rear of each drive shall leave the head of Chesuncook lake. Party of second part, after the rear of the drive leaves the head of Chesuncook lake, and until it reaches Penobscot boom shall have charge of all dams for driving purposes, and for manufacturing purposes, and shall make as clean and expeditious a drive as reasonably possible consistent with the saving of said water in said dams for said purposes.

"Party of first part shall pay party of second part each year for driving said logs that year as above."

This contract when made so far as it is related to driving logs was ultra vires as to the defendant corporation, and equally so as to the Log Driving Company so far as it is related to storing water in its dams for manufacturing purposes. By section 1 of chapter 293 of the Private and Special Laws of 1901, the legislature ratified and confirmed this contract; and power and authority necessary for its execution and to carry out its terms were conferred upon the respective parties thereto. Section 2 authorized the commissioners named in the contract to exercise the powers therein conferred upon them, "and to fix the dates of starting the rear of the drive from the head of Chesuncook lake in each of the years one thousand nine hundred and one and one thousand nine hundred and two, and all corporations and persons interested shall be bound by their decision in fixing said dates and the Charter of the Penobscot Log Driving Company shall be regarded as amended accordingly."

The first defense interposed is that the only obligation the defendant was under to drive the plaintiffs' logs, was by virtue of a contract to which the plaintiffs were not parties, and that for want of privity the action cannot be maintained.

The act of the legislature incorporated the contract into law and conferred upon the defendant powers which it did not before possess. If accepted it made the defendant a public and exclusive carrier so far as the public was concerned. By accepting the act, as it did by accepting and undertaking to drive the logs, the defendant came under a duty to the public, including the plaintiffs, to drive the logs in accordance with the contract. Having that duty it was bound to use due care and diligence in its performance, and a failure to do so would be actionable negligence. It had the exclusive right to drive the plaintiffs' logs to which the plaintiffs must submit. The plaintiffs could not contract with any other party to drive their logs, for the legislative ratification of the defendant's contract with the Log Driving Company and its acceptance of the powers thereby conferred made it an exclusive public carrier within the limits prescribed. *Weymouth* v. *P. L. D. Co.*, 71 Maine, 29. The duty to drive the logs in accordance with the contract was created by law. It was coextensive with the contract, but when "power and authority necessary to carry out the terms" of the contract were conferred upon and accepted by the defendant, the duty was as independent of the contract as if, instead of referring to the contract, the duties of the defendant had been specifically set forth in the act itself. When the defendant undertook to drive the plaintiffs' logs it did so not simply in the performance of the terms of its contract, but in the exercise of the powers conferred upon it by the state, which carried along with them the corresponding duty to use due care and diligence in the exercise of those powers. Privity is not essential to the maintainance of an action of tort for the neglect of a duty created by law. *Nugent* v. *B. C. & M. R. R.*, 80 Maine, 62, 73. It would be manifestly unjust if a man who is by law deprived of all choice, and who is not permitted to drive his logs himself, nor contract with anyone to drive them for him, but is compelled to deliver them for driving to an exclusive public carrier, could maintain no action against it for its negligence in driving his logs because the carrier was at the same time under a contract with some third party to drive them. But such is not the law.

Upon the questions of fact involved the court has given the case

much consideration, partially on account of the existence of considerable difference of opinion among its members. It must be remembered that these questions are so presented by the stipulation of the report that they are not to be decided by us as original questions. The issue before us is, not whether the evidence supports the contention of the plaintiffs, but whether it is sufficient to support a verdict for the plaintiffs, assuming that such a verdict had been rendered. In other words, the case is before us in precisely the same way as if it had come here upon the defendant's motion for a new trial after a verdict for the plaintiffs.

An analysis of this evidence would not be profitable. It is sufficient to say that a majority of the court are of the opinion that the evidence is sufficient to support a verdict in favor of the plaintiffs' contention and allegations, thus briefly stated ; that on account of the defendant's mismanagement, either through negligence or misfeasance, of the large quantity of logs which it had undertaken to drive, including those of the plaintiffs, this drive of logs was so unnecessarily delayed that it did not arrive at its destination in season for the logs to be cared for and secured before the river froze, that as a result of this unnecessary delay, caused by the defendant's fault, either wilful or merely negligent, the logs became separately frozen into the ice of the river so that they could not be in any manner secured, that they there remained until a portion of the plaintiff's logs were carried down river and out to sea during a winter freshet that occurred in the month of December of that year, and that another portion of them were lost in the same manner in the freshet of the next spring.

Another question remains to be considered and decided, and that is whether this fault of the defendant was the proximate cause of this particular injury suffered by the plaintiffs, the amount of the pecuniary loss to the plaintiffs being agreed upon by the parties and stated in the stipulation of the report. Upon this question, the counsel for the defendant, while strenuously denying that the evidence shows fault upon the part of the defendant at any time, further claims that, in any event, the evidence fails to disclose any fault upon the part of the defendant after the drive was turned over the stone dam at the

foot of Quakish Lake on the nineteenth day of September; that after that date, at least, the evidence not only fails to disclose any delay that can be attributed to the fault of the defendant, but does show that there was no such fault, and that the long time occupied in driving the logs from this point to their destination was caused by extremely unfavorable conditions, especially a long continued and severe drought. We think that the defendant's position in this respect is supported by the report.

He thereupon argues that even if fault is disclosed prior to this date, it cannot be held to have been the proximate cause of the injuries sustained by the plaintiffs in the month of December and in the following spring; that numerous efficient and independent causes intervened to produce these injuries to the plaintiffs, viz; the very severe drought which delayed the drive after September nineteenth; the unusually early freezing of the river which occurred on the thirteenth of November, immediately after the arrival of the logs within the Penobscot Boom; and the unusual and extraordinary, if not unprecedented, freshets of December and of the following spring. So that the question is whether the defendant's earlier fault, which was, at least one of the reasons why the logs were delayed to such an extent that they did not arrive at their destination in season to be secured before they became separately frozen into the ice of the river, was the proximate cause of the subsequent loss of the plaintiffs' logs during the December and spring freshets.

The cases are so numerous in which courts have attempted to give definitions of proximate and remote causes, and to establish tests to aid in distinguishing between them, that it would be almost impossible to refer in detail to any considerable portion of them. And this would be useless since the most that can be practically done is to establish certain rather indefinite rules which are generally applicable to all cases, while the decision of each particular case must depend largely upon the peculiar circumstances of that case. As said by our court in *Page* v. *Bucksport,* 64 Maine, 51, in considering this question: "There can be no fixed and immutable rule upon the subject that can be applied to all cases. Much must therefore, as is often said, depend upon the circumstances of each particular case."

In many cases courts have said that in determining what is the prox-imate cause, the true rule is that the injury must be the natural and probable consequence of the negligence complained of. But in the use of the word probable in this definition, it is not meant that the defendant did anticipate or by the exercise of ordinary prudence should have anticipated the precise form in which the injury actually resulted. If a person is injured by the negligence of another, he may recover for the natural and probable consequence of such negligence, although the injury, in the precise form in which it resulted, was not foreseen. It is sufficient that after the injury it appears to have been a natural and probable consequence of the defendant's negligence. *Lane* v. *Atlantic Works,* 111 Mass. 136; *Hill* v. *Winsor,* 118 Mass. 251; *Louisville etc. Railway Co.* v. *Wood,* 113 Ind. 544; *West* v. *Ward,* 77 Iowa 323, 14 Am. St. R. 284.

Other courts have variously used these expressions as to what injuries were proximately caused by a defendant's negligence, differ-ing not very substantially from the rule already referred to : "Such as might probably ensue in the natural and ordinary course of events." "Such, as according to common experience, is likely to result." "Such as according to common experience and the usual course of events might reasonably be anticipated." "Such as are known by common experience to be usually in sequence." " Such as follow according the usual experience of mankind." As few cases are herein cited, reference is made to the very extended note to *Gilson* v. *Delaware and Hudson Canal Co.,* 65 Vt., 213, in 36 Am. St. R. 802, where a very large number of cases upon all branches of the subject are collected.

Another important rule which must be taken into consideration, and which if very generally agreed to is that time or distance is not a decisive test of proximity of cause. The expression means close-ness of causal relation, not nearness in time or distance, although it is undoubtedly true that time and distance, in some cases, may have an important bearing upon the question of causal relation. Upon the other hand, it is not enough that the negligent act com-plained of may constitute one of a series of antecedent events without which, as the result proves, the damage would not have happened;

or that the negligence in question afforded only an opportunity or occasion for the injury, or a mere condition of it, as said by our court in *Pollard* v. *Maine Central R. R. Co.*, 87 Maine, 51, and *Conley* v. *American Express Co.*, 87 Maine, 352.

Coming now to the circumstances of this case, and applying these general, but somewhat indefinite, rules, let us inquire as to the causal relation between the defendant's negligence and the plaintiffs' loss, in order to ascertain whether, upon the one hand, this negligence was merely one of a series of antecedent events, without which, to be sure, the injury would not have occurred, but which merely afforded a condition or opportunity for injury, and whether the injury was in fact caused by subsequent independent and efficient agencies, for which the defendant was not responsible, and which he would not be expected to have guarded against, or, upon the other hand, the plaintiffs' injury was the natural and ordinary result of this negligence, coupled with such natural conditions as should have been foreseen by the defendant, and to guard against which care should have been taken.

The defendant's first position in this respect, as we have seen, is that the delay after September nineteenth was occasioned solely by the severe drought of that season; that with the utmost diligence exercised by the defendant after that time the logs could not have been sooner delivered at the Penobscot Boom, and that except for this drought the drive would have arrived in ample season. The defendant had undertaken to drive a great quantity of logs, about eighty million feet, a distance of almost a hundred miles, across lakes, over rapids and past difficult places of all descriptions. If through negligence its servants delayed moving this drive with reasonable diligence when conditions were favorable, they should have anticipated the chance that later these conditions might become most unfavorable, that there might be a severe drought which would greatly delay, or even perhaps make it impossible to continue, the drive, because unfavorable log driving conditions and droughts, at that season of the year, are matters of frequent occurrence. The successful accomplishment of an undertaking of this magnitude, so that the drive would be concluded before the freezing of the river, permitted of no consider-

able delay from the very beginning of the driving and especially during the period when the conditions were favorable and the water abundant. The earlier delay could have been prevented, the later drought, or at least the chance of such a drought, should have been anticipated. We are therefore unquestionably of the opinion that the defendant's negligence, which a majority of the court are of the opinion that a jury would have been authorized in finding, was the proximate cause of the late delivery at the Penobscot Boom.

The defendant, through its counsel, then says that the actual causes of the injury to the plaintiffs were the two great freshets, when as a matter of fact, the logs were carried away and lost. If these had been unprecedented freshets, and if the loss would only have been occasioned by an unprecedented freshet, there would be great force, of course, in this position. And if, independently of the fact, that the logs became frozen in the ice of the river, they had been lost by reason of the occurrence of any freshet, it might well be claimed that the arrival of the logs, in conjunction with the occurrence of a freshet, merely created an occasion or opportunity or condition for the injury, since freshets are liable to occur at any time, and one might have occurred so as to have occasioned the loss of the logs if they had arrived much earlier in the boom. Under such circumstances the defendant's earlier negligence might have been only, in connection with the other incidents, a cause of the final, direct and proximate cause by which the damages sought to be recovered were immediately occasioned, and the defendant's negligence might not be called the proximate cause of the injury. See *Denny* v. *New York Central Railroad Co.*, 13 Gray, 481; *Hoadley* v. *North Transportation Co.*, 115 Mass. 304, and numerous other cases to the same effect.

But this loss cannot be attributed to the magnitude of the two freshets referred to, since there was evidence from which a jury would be justified in finding that the logs would have been lost, unsecured as they were, during any ordinary freshet which might happen while the logs were in this condition. Nor, do we think, that the loss of the logs can be attributed to the freshets at all, although, certainly, if there had been no freshet the logs would not have been carried away; but rather to the conjunction of these two causes, the

defendant's negligence whereby the logs were not delivered until the thirteenth of November when they might and should have been delivered much earlier, and the freezing of the river at that date, which was undoubtedly unusually early. But the defendant must have anticipated the necessity of driving the logs in before the river froze, and must have known that if they were not driven into the boom in season to be properly secured before the river froze, there was danger of the loss of the logs when the first freshet came, as it was almost sure to come at some time, in precisely the way that they were lost during those two freshets. Appreciating the necessity of concluding the drive before the freezing of the river, and realizing the danger of loss if it was not done, the defendant should have also anticipated that there is always the chance that the river may freeze unusually early. Climatic conditions are so frequently unusual that this fact must be anticipated and guarded against. No person can prudently rely, in important affairs, upon any great degree of regularity in such matters. Severe and long continued droughts in the latter part of the summer and early fall and the unusually early freezing of rivers in this climate are not so uncommon that the chance of both of these conditions occurring should not be eliminated from consideration by a prudent person who had undertaken a work of this magnitude, and this is especially true when it is obvious that, if these conditions do occur, there is danger of injury of precisely this character.

The defendant cannot avoid liability for its negligence by reason of the early freezing of the river, because this was not an independent intervening cause, but a natural condition, the chance of the occurrence of which should have been foreseen.

Our conclusion is that a jury would have been authorized in finding from the evidence, and in accordance with the rules of law that the negligence of the defendant, although all occurring prior to September nineteenth, was the direct and proximate cause of the injury sustained by the plaintiffs.

The members of the court who have concurred in this opinion have done so irrespective of their individual opinion upon the question of

fact involved in the case, the opinion, in that respect, simply stating the conclusion of the majority of the court.

In accordance with the stipulation the plaintiffs will have judgment for the sum of $9871.31, with interest thereon from the date of the writ.