Clifford WING, Jr.

v.

Bernard L. MORSE.

Supreme Judicial Court of Maine.

Feb. 15, 1973.

Levine, Brody & Levine, by Morton A. Brody, Waterville, for plaintiff.

Locke, Campbell & Chapman, by Joseph B. Campbell, Augusta, for defendant.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY, WERNICK, and ARCHIBALD, JJ.

POMEROY, Justice.

Before us for decision is an appeal, timely made, from a judgment entered on a verdict rendered by the jury in a personal injury action.

The jury found the total damages to the plaintiff to be $12,000.00. The jury further found there was contributory fault on the part of the plaintiff and that $200.00 should be deducted from the total damage figure. The Court, acting pursuant to Rule 58, Maine Rules of Civil Procedure, directed judgment be entered for the plaintiff in the sum of $11,800.00. Such judgment was forthwith appropriately entered by the Clerk.

This appeal followed.

We sustain the appeal and order a new trial.

The action arose out of an automobile accident which occurred on Interstate Highway #95 in Bangor, Maine.

The undisputed evidence makes it apparent Interstate Highway #95 at the point where the accident occurred is a 4-lane limited access highway, 2 lanes being utilized for northbound traffic and 2 lanes for southbound traffic. A median strip separated the northbound lane from the southbound lane. The defendant admitted he had attempted to make a U-turn crossing from the northbound lane into the southbound lane across a median strip.

That this constituted a violation of law is not disputed.

It is likewise clear that this negligent action on the part of the defendant was the legal cause of a collision with an automobile to which a house trailer was attached which was proceeding in a southerly direction along the southbound lane of the highway. This caused the automobile and trailer to come to rest with the automobile across the passing lane, so-called, of the southbound lane of the highway and the trailer projecting somewhat into the traveled lane.

Shortly after this collision occurred a State Police officer appeared on the scene and stopped his unmarked police vehicle on the median strip. The police vehicle was equipped with a blue light on its dash. The officer turned on the blue light. A large number of automobiles were traveling in the southbound lane of the highway and by reason of the accident, had been caused to slow down to such an extent a line of vehicles had been formed extending from the scene of the accident back a distance the jury could have concluded was about one-half mile.

It is undisputed that the plaintiff was driving a Ford Diesel tractor with a refrigerated trailer attached. The trailer was loaded with potatoes and the trip had originated in Caribou. The plaintiff's destination was Vassalboro. His testimony on direct examination as to the events immedi-

ately prior to the happening of the accident was as follows:

Q Alright, and what happened as you approached the Hogan Interchange or bypassed the Hogan interchange?

A I was in the left hand lane and I was looking to get back into the right hand lane because that is where trucks belong, but the traffic from the streets before I got to the Hogan Road was still to the right of me so I couldn't pull over. I see this traffic up ahead and it seemed to be moving very slow, but as I got closer it wasn't moving at all.

Q Now what did you see? What actually did you see?

A I see these—I see these two cars. One was at quite a right angle to me, and I could see the lights, the tail lights of it.

Q When you say it was at quite a right angle, what do you mean?

A Well it was off—the tail end was off to the side a little ways.

Q And where was the front end?

A The front end was out towards the middle of the road.

Q What else did you see with reference to that automobile?

A I see that it wasn't moving.

Q Did you see another vehicle in the area?

A I didn't notice. They were—there was another vehicle. It didn't look like it was moving, but I wasn't sure of that either.

Q What else did you see?

A So I started slowing down.

Q What else did you see?

A Oh, I see that there was no way for me to get by them and there was no way for me to stop.

Q How far away were you, would you estimate, when you first saw these vehicles in the road?

A Oh, approximately 200 yards.

Q Alright, and then what did you do at that point?

A I applied the brakes.

Q And what else did you do?

A I see that I couldn't stop, and I couldn't pull to the right because of the traffic on the right of me, so I left the road to avoid hitting the cars in the road.

Q You say you left the road. What did you do?

A I pulled it down into the median strip.

Q Pulled what?

A The truck.

Q Alright. The median strip being the grassy area between the north bound and south bound lanes?

A Right.

Q Alright. Tell us what happened as you pulled it over off the road?

A When I pulled it off the road I figured, well I have had it, but here goes, and I did. I went down into the Median strip and across the service road. When I hit the other side everything just went white and I don't remember too much after that."

The appellant here urges upon us that the defendant's negligence in attempting to negotiate a U-turn in violation of the law was so remote it cannot be considered a proximate cause of the plaintiff's injury.

From the evidence the jury would be forced to conclude that at least ten minutes elapsed between the happening of the collision, admittedly occasioned by the defendant's attempted U-turn and the accident which occasioned the plaintiff's injuries.

Very few words commonly employed in the law of torts have occasioned as much case law and confusion as the term *"proximate cause."*

The word *"proximate"* is a legacy of Lord Chancellor Bacon. Bacon, Maxims of the Law, Reg. 1.[1]

When the word *"proximate"* was first taken up by the courts, it had connotations of proximity of both time and space. These connotations have long since disappeared. It is a confusing and therefore an unfortunate word because it improperly places emphasis on the physical or mechanical closeness of the cause under investigation and the happening of the event in issue. Of this, most modern authorities are in agreement. See for example, Edgerton, Legal Cause, 72 U.Pa.L.Rev. 211 (1924); Morris, On the Teaching of Legal Cause, 39 Colum.L.Rev. 1087 (1931).

There are other situations in which a *"cause"* is clearly near in both point of time and distance, but yet, because of legal policy considerations working in the framework of the particular facts, such cause is not held to be a *"legal cause."* In such cases there is the intervention of an unrelated cause, (unrelated in the sense of not being within the policy considerations) not reasonably foreseeable, which intervening cause is itself an efficient cause. See for example: Curtis v. Jacobson, 142 Me. 351, 54 A.2d 520 (1947).

It is for this reason our Court has defined proximate cause to mean:

" . . . that cause which, in natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the result would not have occurred."

Johnnson v. Dubois, Me., 256 A.2d 733, 734 (1969).

In Marsh v. Great Northern Paper Company, 101 Me. 489, 502, 64 A. 844, 850 (1906), it was said:

"Another important rule which must be taken into consideration, and which if (sic) very generally agreed to is that time or distance is not a decisive test of proximity of cause. The expression means closeness of causal relation, not nearness in time or distance, although it is undoubtedly true that time and distance, in some cases, may have an important bearing upon the question of causal relation."

A complete and thorough discussion of the whole question of proximate cause as applied to a situation not substantially unlike that here before us is to be found in an opinion by Chief Judge Magruder in Marshall v. Nugent and Socony-Vacuum Oil Company, 222 F.2d 604, 610–612 (1st Cir. 1955). See also Apanovich v. Wright, 226 F.2d 656 (1st Cir. 1955).

■ In approaching any problem of proximate cause one must start with the premises that the act or conduct, to be negligent toward another, must involve an unreasonable risk of

(1) causing harm to a class of persons of which the other is a member, and

(2) subjecting the other to a hazard from which the harm results.

Cause, in the philosophic sense, includes each of the substantial number of events without which any happening would not have occurred. Each of the events is a cause in that sense. The effect of many of them, however, is so insignificant that no reasonable mind would ordinarily think of them as causes.

■ A negligent act, i. e., a violation of the duty to use reasonable care toward an-

---

1. "In jure non remota causa, sed proxima spectatur. [In law the near cause is looked to, not the remote one.] It were infinite for the law to judge the cause of causes, and their propulsion of one another; therefore it contenteth itself with the immediate cause and judgeth of actions by that, without looking to any further degree."

other, is a *legal cause* of harm to such other person if

    (a) the actor's conduct is a *substantial factor* in bringing about the harm, and

    (b) there is no rule of law relieving the actor from liability because of the manner in which his negligence has resulted in the harm.

■ Here, in the case before us, it is clear that as a matter of law this defendant owed a duty to all travelers on the highway to exercise reasonable care toward all such travelers whom he ought reasonably to have had in contemplation as a traveler to be affected by the doing of his negligent act at the time he did such act. There was certainly no rule of law relieving him from liability. His failure to deport himself in accordance with the standard of care by which he was bound, was most certainly a *substantial factor,* though clearly not the only factor, in bringing about this plaintiff's misfortune.

It is also clear the defendant's negligence in attempting to negotiate the U-turn from the northbound lane into the southbound lane caused the collision with the unidentified motor vehicle to which the house trailer was attached. This the defendant concedes in his brief.

■ The accident in which the plaintiff received injuries, although happening ten minutes or more after the first collision, occurred at a time the highway was partially clogged by traffic and before the southbound lane had become cleared. The risks created by the defendant's departure from the standard of care required of all travelers on the highway were still viable.

The question whether the defendant's violation of the law prohibiting the U-turn, which admittedly brought about the collision with the unidentified vehicle, was a

*"proximate cause"* or *"legal cause"* of the plaintiff's injuries was for the jury. Johnson v. Dubois, supra; Marsh v. Great Northern Paper Company, supra.

The jury found it was such legal cause.

We cannot say as a matter of law it was not.

■ We turn now to a consideration of the conduct of the plaintiff.

By his own admission, the plaintiff observed a long line of traffic ahead of him, moving very slowly. Despite this observation he continued on driving in the passing lane. As he approached the point where the accident occurred he saw that the traffic ahead of him was completely stopped. It was then he observed for the first time that the highway ahead was substantially blocked. When 200 yards from the vehicle blocking the highway, the plaintiff says he applied his brakes hard and realized he could not bring his truck to a stop. In his words, he then "pulled it [the truck] down into the median strip."

The only evidence of speed submitted to the jury was the officer's statement that it [the truck] was going at quite a fast speed.[2]

That the injuries received by the plaintiff in the resulting crash were very serious is not disputed.

The jury, by its verdict, found that the plaintiff was not conducting himself as a reasonably prudent man exercising due care for his own safety. No other conclusion would have been warranted by the evidence.

■ The plaintiff did not seek an instruction to the jury as to the standard of conduct by which he was bound in an emergency and no such instruction was given. Such instruction would have been inappropriate.

---

**2.** The officer testified that he did not even see the truck until it came up over a steep embankment bordering the

crossover and passed to the rear of his car.

An emergency has been described as *"the perplexing contingency or complication of circumstances, in the making or bringing together of which . . . no negligence of the defendant* [the plaintiff in the instant case] *had to do."* Coombs v. Mackley, 127 Me. 335, 338, 143 A. 261, 262 (1928).

It is obvious in this case the plaintiff's own conduct, which the jury properly found was not reasonable, helped make or bring together the perplexing contingencies or complication of circumstances.

We thus have a plaintiff and a defendant whose causal fault combined to bring about grievous harm to the plaintiff. The rights of the plaintiff vis-a-vis the defendant must be determined in the light of *those found facts.*

In 1965 our Legislature adopted what it called a *"comparative negligence"* statute, now 14 M.R.S.A. 156. As originally enacted (P.L. 1965, c. 424), it read as follows:

"Where any person suffers death or damage as a result of his own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereto shall be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.

"Where damages are recoverable by any person by virtue of this section subject to such reduction as is mentioned, the jury shall find and record the total damages which would have been recoverable if the claimant had not been at fault and the extent to which those damages are to be reduced.

"Fault means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence.

"If such claimant is found by the jury to be equally at fault, the claimant shall not recover." [3]

The Legislative Record of the 1965 session of the Legislature (Legislative Record 1965, pg. 2410) clearly demonstrates the Legislature deliberately chose to enact the English statute which came into being by the Law Reform Act of 1945, 8 & 9 Geo. 6, c. 28, s. I. This Act was chosen as the model from which our statute was copied, despite the fact there were available to the Legislature previously enacted statutes

---

3. The statute was amended in 1969 and again in 1971, so that it now reads as follows:

"Where any person suffers death or damage as a result partly of his own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof shall be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.

"Where damages are recoverable by any person by virtue of this section, subject to such reduction as is mentioned, the court shall instruct the jury to find and record the total damages which would have been recoverable if the claimant had not been at fault, and further instruct the jury to reduce the total damages by dollars and cents, and not by percentage, to the extent deemed just and equitable, having regard to the claimant's share in the responsibility for the damages, and instruct the jury to return both amounts with the knowledge that the lesser figure is the final verdict in the case.

"Fault means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence.

"If such claimant is found by the jury to be equally at fault, the claimant shall not recover." (14 M.R.S.A. 156)

from many American states, especially Wisconsin [4] and Arkansas.[5]

The language in the Maine statute, "the damages recoverable in respect thereto shall be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage," was unique among American comparative negligence statutes.

By the time the Maine statute was enacted in 1965 the English Law Reform Act and the Australian Wrongs Act (its Australian counterpart) had been interpreted many times by the English and Australian Courts.

■ A statute adopted from another country will be presumed to have been adopted with the construction placed on it by the courts of that country before its adoption. Newell v. Moreau, 94 N.H. 439, 444, 55 A.2d 476, 480 (1947).[6]

See also In re North River Logging Co., 15 Wash.2d 204, 208, 130 P.2d 64, 66 (1942).[7]

Shortly after the passage of the Law Reform Act of 1945, Glanville L. Williams, one of the most highly regarded English textwriters, wrote an analysis of the Act which is reported in Vol. 9, Modern Law Review, 105 (1946).

"Thus
Was justice ever ridiculed in Rome:
Such be the double verdict favoured here
Which send away both parties to a suit
Nor puffed up nor cast down—for each a crumb
Of right, for neither of them the whole loaf.

(The Ring and the Book, ii, 747–752).

"Thus Robert Browning: and from his lines we may perhaps gather what he

4. "Wisconsin Statutes: Section 331.045
   *Contributory Negligence; when bars recovery:*
   Contributory negligence shall not bar recovery in an action by any person, or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not as great as the negligence of the person against whom recovery is sought, but any damages allowed shall be diminished in the proportion to the amount of negligence attributable to the person recovering."

5. "Arkansas Statutes:  Ann. Secs. 27–1730.1 and 2 Supp.1961
   *Contributory negligence, not a bar to recovery where less than negligence of person causing damage:*
   Contributory negligence shall not bar recovery of damages for any injury, property damage or death where the negligence of the person injured or killed is of less degree than the negligence of any person, firm, or corporation causing such damage.
   *Contributory negligence as diminishing recovery:*
   In all actions hereafter accruing from negligence resulting in personal injuries or wrongful death or injury to property, contributory negligence shall not

prevent a recovery where any negligence of the person so injured, damaged, or killed is of less degree than any negligence of the person, firm or corporation causing such damage; provided that where such contributory negligence is shown on the part of the person injured, damaged or killed, the amount of recovery shall be diminished in porportion to such contributory negligence."

6. In Newell v. Moreau, the New Hampshire Court said:
   "It thus appears that the parent English statute was the model for the legislature and its judicial construction, at least prior to 1911, the guide for this court to the extent that the statutory provisions were the same or substantially similar." (Citations omitted)
   "This court has made extensive use of the earlier English workmen's compensation cases in the original construction of our act."

7. In this case the Washington Court said:
   "It is important, therefore, to ascertain the construction placed upon the British acts in construing our own. For it is a general rule of statutory construction that a statute adopted from another state or country is presumed to have been taken with the construction there placed upon it."

would have thought of the Law Reform (Contributory Negligence) Act, 1945. But then, Browning was not a lawyer, or he could not have supposed that one party to a suit must necessarily be wholly in the right and the other wholly in the wrong. The new Act endeavours to reflect in terms of legal result the fact that in the world as we know it damage may be caused by the fault of both parties. It thus relieves the hardship caused by the common-law rule under which one of two negligent parties might emerge from the accident penniless while the other went unscathed. Even if nature left the loss equally distributed between the parties, the result of the last-opportunity rule [8] at common law might be to pile the whole upon one of them; and perhaps the Act remedies this too. The advantage of the Act is not only that it enables the loss to be apportioned in accordance with ordinary ideas of fairness, but also that, by rendering possible the division of loss between two pairs of shoulders, it makes the loss in appropriate cases easier to be borne."

This statement of the purposes of a so-called comparative negligence statute makes it clear that despite the title attached to the Act, it would be more appropriately termed a Damage Apportionment Act.

Stated succinctly, we note the Act mandates an apportionment of the damage between two persons, both of whom acted unreasonably and thus brought about the damage.[9]

The first question which naturally arises from even a casual reading of the Act is, what is intended by the definition as the meaning of fault?

According to the definition, "fault means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would apart from this section give rise to the defense of contributory negligence."

Reading the first paragraph of the statute back we note that the word *"fault"* is there used twice to describe conduct. [Actually the word is used three times but the third refers back to its first use.] Where it first occurs it refers to the fault of the plaintiff. Where it occurs the second time it refers to the defendant's fault. In the first context it refers to matters of defense, in the second to the issue of liability.

■ At common law, negligence is defined as a breach of a duty owed to a foreseeable plaintiff to exercise reasonable care for the plaintiff's safety. Jamieson v. Lewiston-Gorham Raceways, Inc., Me., 261 A.2d 860, 862 (1970). Contributory negligence did not at common law presuppose a duty of care owed to someone else. It only presupposed a general duty based upon policy considerations to exercise reasonable care for one's own safety. Field v. Webber, 132 Me. 236, 169 A. 732 (1933). We are satisfied the Legislature never intended that fault which would only have given rise to the defense of contributory negligence at common law will now create liability.

A common sense reading of the Act, with its declared purposes in mind, requires that the definition of fault appearing in the Act be treated as if there were two definitions. One is in relation to the fault of the defendant who owed the duty which was breached and one in relation to contributory fault. See: G. Williams,

8. Davies v. Mann, 10 M. & W. 546 (1842), known in this State as the doctrine of the last clear chance. O'Brien v. McGlinchy, 68 Me. 552 (1878); Barlow v. Lowery, 143 Me. 214, 59 A.2d 702 (1948). That the doctrine became inapplicable when our comparative negligence law went into effect was estab-

lished by this Court in Cushman v. Perkins, Me., 245 A.2d 846 (1968).

9. There is, of course, the further provision that the claimant, to be entitled to recover anything, must be found to be less than *"equally at fault"* as hereinafter discussed.

Joint Torts and Contributory Negligence, ch. 13 (1951).

▮ As the English Courts interpret their contributory negligence Act, the language of which is in most respects identical to our comparative negligence Act, apportionment must have regard to claimant's share in the responsibility for the damage. Such is the express language of our statute. This means that fault not contributing to the damage cannot be taken into account. The only fault that can be considered is fault apart from which the damage would not have occurred. Once it is determined that causative fault exists on the part of the plaintiff and the part of the defendant and it is further found that the causative fault of the plaintiff or claimant is less than the causative fault of the defendant, apportionment shall result by reducing the damages recoverable by the claimant "to such extent as the jury thinks just and equitable, having regard to the claimant's share in the responsibility for the damage."

As the English Courts have construed the identical language in the Law Reform Act, apportionment is on the basis of fault or blame. This involves a comparison of the culpability of the parties, meaning by culpability not moral blame but the degree of departure from the standard of a reasonable man. See Pennington v. Norris, 96 Commonw.L.R. 10 (1956). See also Davies v. Swan Motor Co., Ltd., [1949] 2 K.B. 291, 326 (C.A.), where Lord Justice Denning said:

"Whilst causation is the decisive factor in determining whether there should be a reduced amount payable to the plaintiff, nevertheless the amount of the reduction does not depend solely on the degree of causation. The amount of the reduction . . . involves a consideration, not only of the causative potency of a particular factor, but also of its blameworthiness. The fact of standing on the steps of the dustcart is just as potent a factor in causing damage, whether the person standing there be a servant acting negligently in the course of his employment or a boy in play or a youth doing it for a lark: but the degree of blameworthiness may be very different."

See also Bybyk v. Wilton [1959] S.A.S.R. 112; Fleming, The Law of Torts, 220 4th Ed. 1971); Teubner v. Humble, 108 Commonw.L.R. 491 (1962).

▮ When the defendant's liability is based on legal fault, comparison is invited between degrees of fault which may range from trivial inadvertence to the grossest recklessness.[10] Deliberate disregard of safety rules must be judged more severely than merely imperfect reaction to a crisis: a driver who deliberately cuts a corner as compared with one who fails to react promptly to such an emergency. Jennings v. Maumill, 30 Austl.L.J. 100 (1956).

▮ In judging conduct of an actor it should be considered complete carefulness is at one end, a deliberate intention to bring about the result is at the other. Negligence ranges from the least blameworthy type, namely, inadvertence and negligent errors of judgment up to a state where knowledge or more complete knowledge supervenes and the negligence of obstinacy, self-righteousness or recklessness is reached. The factfinder must be told then under our statute, it should give consideration to the relative blameworthiness of the causative fault of the claimant and of the defendant.

▮ The Maine comparative negligence statute differs from its English and Australian counterpart only because of the

10. We do not here decide what rule should apply when the defendant's liability is strict and he, in fact, has not been negligent so that no comparison can be had between the culpability of the plaintiff and the culpability of the defendant. See Payne, Reduction of Damages for Contributory Negligence, 18 Modern Law Rev. 344 (1955).

insertion of the last paragraph found in the Act. This paragraph was not found in the original draft of the Bill considered by the Legislature and is quite obviously the result of a political compromise. This paragraph reads:

"If such claimant is found by the jury to be equally at fault, the claimant shall not recover."

Once again it is noted the word *"fault"* appears in the statute. Construing the statute as a whole, as we must, we interpret this paragraph as if it had read:

"If in the apportionment process such claimant is found by the jury to be equally responsible for the damage sustained or more responsible for the damage sustained than the defendant, the claimant shall not recover."

The jury should be told that if it determines, in the apportionment process that the claimant's responsibility for the damage is less than that of the defendant, it should proceed to the last step in the apportionment process.

Having determined the relative departure from the standard of a reasonable man, the factfinder is finally directed by the Act to reduce the damages recoverable by the plaintiff to such extent as the factfinder thinks just and equitable, having regard to the complainant's share in the responsibility for the damages.

█ By the use of the term *"as the jury thinks just and equitable,"* the Legislature intended that the factfinders, representing as they do the judgment of the community, should bring that judgment into play in determining the amount of reduction from the total damage to make, limited only by the direction they must have *"regard to the claimant's share in responsibility for the damage,"* i. e., the blameworthiness of the causative fault.

█ In the case now before us, the presiding Justice read the language of the

statute verbatim. He concluded by saying: *"I have performed the mandate of our Legislature."*

The *"mandate"* to which the presiding Justice obviously referred was the paragraph inserted in the Act by the amendment of 1969, Public Laws of 1969, c. 399, reading as follows:

"The trial judge shall read the foregoing two paragraphs to the jury in their entirety." [11]

It could well be that the presiding Justice considered this *"mandate of our Legislature"* to permit only a reading of the statute as instruction to the jury. If so, this error is completely understandable in view of the language in the statute at the time this case was tried.

No other instructions were given the jury concerning the meaning of the statute or the rules of law by which it was bound in determining the ultimate conclusion it was called upon to reach, that is the amount of damages, if any, recoverable by the plaintiff.

One of the principal complaints which the defendant argues before us is that a reduction of only $200 from the total damage received by the plaintiff is, he says, clearly less than the amount by which the total damages ought to have been reduced.

We are aware this is the first time this Court has ever undertaken a detailed interpretation of our statute.

We are also aware neither the plaintiff nor the defendant made objection to the charge given insofar as it related to the proper interpretation of the comparative negligence statute.

Rule 51(b), Maine Rules of Civil Procedure, provides in part:

"No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating dis-

---

11. This paragraph was later deleted by P.L.1971, c. 8.

tinctly the matter to which he objects and the grounds of his objection."

This Court has always reserved the right in the interest of justice to reverse for palpable, prejudicial error in instructions to which no objection was made. Thompson v. Franckus, 150 Me. 196, 107 A.2d 485 (1954); Gould v. Bangor and Aroostook Railroad Company, Me., 292 A.2d 837 (1972).

In *Gould* we said:

"Even though no objection was offered to the instructions as given and no additional instructions were requested, the instructions were so inadequate and misleading as to leave the jury without the guidance essential to its task. Under these circumstances prejudicial error is manifest and a new trial is required."

There are statutes so written and so easily understandable that no explanation is required in order for the jury to know their meaning.

In the instant case, however, the precise issues in controversy had applicable thereto a statute which uses many words of art. It contains a definition of *"fault"* requiring analysis by lawyers experienced in tort law for complete understanding, and as we have pointed out, uses the word *"fault"* in the same definition to describe two quite different legal concepts.

"In the trial of an action it is the duty of the presiding justice, at the close of the evidence, to present the case, in his charge to the jury, by pointing out clearly and concisely the precise issues in controversy and the rules of law applicable thereto."

Desmond Pro Ami v. Wilson, 143 Me. 262, 60 A.2d 782 (1948).

No jury could reasonably be expected to be made aware of the legal principles involved in the controversy it was called upon to decide, from a mere reading of the statute. In this particular case reading the statute without any instruction as to its meaning was, in effect, to give no instruction at all.

We must and do conclude failure to give any explanation as to the meaning of the statute which was read, was palpable, prejudicial error.

The entry must be,

Appeal sustained.

New trial ordered.