Margaret AUSTIN

v.

**RAYBESTOS–MANHATTAN, INC.**

Supreme Judicial Court of Maine.

Argued Oct. 17, 1983.

Decided Jan. 17, 1984.

McTeague, Higbee, Libner, Reitman & Priest, Maurice A. Libner (orally), Brunswick, for plaintiff.

Thompson, McNaboe & Ashley, Thomas R. McNaboe (orally), Leonard W. Langer, Mark G. Furey, Portland, for defendant.

Before McKUSICK, C.J., and NICHOLS, ROBERTS, VIOLETTE, WATHEN and SCOLNIK, JJ.

McKUSICK, Chief Justice.

Invoking the mechanism for state-federal judicial co-operation authorized by 4 M.R.S.A. § 57 (Supp.1982–1983) and M.R.Civ.P. 76B, the United States District Court for the District of Maine has certified to our court the following question of Maine law:

> Is Maine's comparative negligence statute, 14 M.R.S.A. § 156 [1980], applicable to plaintiff's claim in this action based on 14 M.R.S.A. § 221 [1980]?

Our answer is yes, but in only the limited way described in this opinion.

## I. *Factual and Statutory Background*

The certified question has arisen in the course of a federal suit prosecuted by Margaret Austin, the administratrix of Blaine Austin's estate, against Raybestos-Manhattan, Inc., and other asbestos manufacturers. Subject matter jurisdiction of the federal court is founded solely on diversity of citizenship. Thus, the substantive law of Maine governs the action.

Blaine Austin worked as a painter and cleaner at Bath Iron Works from 1952 through the fall of 1976. In the course of his employment he was exposed to asbestos, and in October, 1977, he died from pleural mesothelioma, an asbestos-induced cancer of the lungs. Defendant Raybestos-Manhattan sold some of the asbestos to which Austin was exposed.

Plaintiff's federal complaint stated a cause of action based on negligence and also

one based on strict liability under 14 M.R.S.A. § 221.[1] At trial the federal district court directed a verdict for the defendants on the strict liability count. In doing so, the federal judge relied upon a dictum of *Burke v. Hamilton Beach Division,* 424 A.2d 145, 148 (Me.1981), to the effect that section 221 did not apply to claims involving a defective and unreasonably dangerous product sold prior to the date in 1973 when that strict liability section went into effect. On the negligence count, the jury made special findings that Raybestos-Manhattan was guilty of negligence that proximately caused Mr. Austin's cancer and death, but also found that his own contributory negligence[2] was equal to, or greater than, the negligence of that defendant. Pursuant to the comparative negligence statute, 14 M.R.S.A. § 156, the court entered judgment for defendant Raybestos-Manhattan.

By the time plaintiff Austin's appeal to the First Circuit Court of Appeals was decided, we had held in *Adams v. Buffalo Forge Co.,* 443 A.2d 932 (Me.1982), exactly contrary to the earlier *Hamilton Beach* dictum. However, the district court's error in directing a defendant's verdict was harmless, the First Circuit held, if under Maine law *Mr. Austin's contributory negligence was a defense to the strict liability claim.* Accordingly, the First Circuit remanded the case to the district court. *Austin v. Unarco Industries, Inc.,* 705 F.2d 1 (1st Cir.), *cert. dismissed,* —— U.S. ——, 104 S.Ct. 34, 77 L.Ed.2d 1454 (1983). On remand, the feder-al district court certified to this court the above-quoted question of Maine law.

Maine's comparative negligence statute,[3] 14 M.R.S.A. § 156, was enacted in 1965. *See* P.L. 1965, ch. 424 (effective Sept. 3, 1965). Section 156 provides, in pertinent part:

> Where any person suffers death or damage as a result partly of his own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof shall be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.

> . . . .

> Fault means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence.

> If such claimant is found by the jury to be equally at fault, the claimant shall not recover.[4]

Maine's strict liability statute, 14 M.R.S.A. § 221, was enacted in 1973. *See* P.L. 1973, ch. 466 (effective Oct. 3, 1973). Under that statute, a plaintiff may recover for injuries resulting from an unreasonably dangerous, defective product without having to prove negligence on the part of the

---

**1.** The complaint also contained a breach of warranty count, but plaintiff did not press that count through trial.

**2.** The later First Circuit opinion summarized the evidence of contributory negligence as follows:

> Defendants had introduced evidence that the decedent could have worn a respirator that would have reduced his risk of cancer, but that he had failed to do so.

*Austin v. Unarco Industries, Inc.,* 705 F.2d 1, 3 (1st Cir.1983).

**3.** Although section 156 is loosely referred to as Maine's "comparative negligence statute," it in specific terms requires a comparison of "fault,"

of which by express definition negligence is but one variety. However, as we determine in answering the certified question, a plaintiff's fault consists only of what, absent section 156, would give rise to the defense of contributory *negligence.*

**4.** The final quoted sentence of 14 M.R.S.A. § 156 was original to Maine's comparative negligence statute, which was otherwise modeled on the English Law Reform Act 1945. *See* n. 5 below. That sentence bars recovery by claimants equally or more at fault, but it nonetheless does not modify the applicability of the whole statute to the same broad sweep of claims that the English statute covers. See the discussion in part II below.

defendant in preparing or selling that product. Section 221 reads in full as follows:

One who sells any goods or products in a defective condition unreasonably dangerous to the user or consumer or to his property is subject to liability for physical harm thereby caused to a person whom the manufacturer, seller or supplier might reasonably have expected to use, consume or be affected by the goods, or to his property, if the seller is engaged in the business of selling such a product and it is expected to and does reach the user or consumer without significant change in the condition in which it is sold. This section applies although the seller has exercised all possible care in the preparation and sale of his product and the user or consumer has not bought the product from or entered into any contractual relation with the seller.

Our analysis of the applicability of the comparative negligence statute to a strict liability action starts where *Wing v. Morse*, 300 A.2d 491 (Me.1973), left off. Section 156 is applicable at all only "[w]here any person suffers death or damage as a result partly of his own fault and partly of the fault of any other person or persons." For section 156 to apply, both the plaintiff (or her decedent) and the defendant must be at "fault," as fault is defined in that section. As *Wing v. Morse*, 300 A.2d at 499, noted, however, the term "fault" is used in two different senses in the introductory clause that defines the scope of section 156. In the first instance, in referring to the fault of a plaintiff, the term "fault" identifies matters of defense; in the second, in referring to the fault of a defendant, the term identifies grounds for liability. *Id.* The third sentence of section 156, which defines fault, contains not one, but two definitions. To read the statute otherwise

would be to create liability for fault that at common law does not give rise to liability but merely to the defense of contributory negligence. *Id.* That consequence is avoided when the definitional sentence is read to define a defendant's fault as "negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort," and a plaintiff's fault as "negligence, breach of statutory duty or other act or omission which . . . would, apart from [section 156], give rise to the defense of contributory negligence." *See* G. Williams, *Joint Torts and Contributory Negligence* § 76, at 318 (1951). We now analyze how these principles of *Wing v. Morse* apply to the defendant and the plaintiff in a strict products liability action.

II. *The "Fault" of a Strict Liability Defendant*

First, we conclude that any defendant who is subject to liability under section 221 is thereby determined to be at "fault" within the intendment of section 156. That section defines a defendant's fault to include, in addition to negligence, both a "breach of statutory duty" and any "other act or omission which gives rise to a liability in tort." A strict liability claim under section 221 does allege "fault" under either branch of the statutory definition of that term as applied to defendants.

"*Breach of statutory duty.*" An examination of the origins of our comparative negligence statute dispels any doubt of the propriety of applying the first phrase "breach of statutory duty" to the product sales that are made tortious by section 221. The relevant portions of section 156 were taken directly from the English Law Reform (Contributory Negligence) Act 1945, 8 & 9 Geo. 6, ch. 28.[5] *See Wing v. Morse, 300*

**5.** The Law Reform (Contributory Negligence) Act 1945 reads in pertinent part as follows:

**1. Apportionment of liability in case of contributory negligence**

(1) Where any person suffers damage as the result partly of his own fault and partly the fault of any other person or persons, a claim in respect of that damage shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof shall be reduced to such extent as the court thinks just and equitable having regard to the claimant's share in the responsibility for the damage:

A.2d at 497. *See also* 2 Legis.Rec. 2588, 2589 (1965) (statements of Reps. Brennan and Berman). Where our legislature has adopted a statute from another jurisdiction, that jurisdiction's precedents are useful in interpreting our own statute. *See Tibbetts v. Tibbetts,* 406 A.2d 70, 76 (Me.1979); *Mt. Vernon Telephone Co. v. Franklin Farmers' Co-op.,* 113 Me. 46, 92 A. 934 (1915). Although many English statutes create only an action for statutory negligence, *see, e.g., Lochgelly Iron and Coal Co. v. M'Mullan,* [1934] A.C. 1, many others impose strict liability for breach of a statutory duty. *See Salmond & Heuston on the Law of Torts* 236 (18th ed. 1981). The latter statutory actions have been distinguished from claims for negligence. *See* 35 *Halsbury's Statutes of England* 541 (3d ed. 1977). In *John Summers & Sons, Ltd. v. Frost,* [1955] 1 All E.R. 870, holding that the statutory duty to provide secure fencing for any dangerous part of factory machinery was strict, all five judges of the House of Lords approved the application of the contributory negligence defense against the strict liability imposed by the statute. *See also London Passenger Transport Board v. Upson,* [1949] 1 All E.R. 60.[6] Thus, prior to the time that Maine in 1965 took over almost verbatim the comparative fault provisions of the Law Reform Act of 1945, it was well established in English law that those provisions applied to strict liability imposed upon a "breach of statutory duty." This legislative history of our section 156 teaches us that a defendant's strict liability under a statute such as section 221 constitutes "fault" for purposes

of comparing the responsibility of the parties.

■ *"Act or omission which gives rise to a liability in tort."* The alternative definition of a defendant's "fault" even more clearly brings a strict products liability claim within the intended scope of the Maine comparative negligence statute. In addition to claims for breach of statutory duty and negligence, section 156 by its terms applies to any claim that is based upon any "act or omission which gives rise to a liability in tort." By selecting that broadly inclusive language the legislature displayed an intention to make all tort actions subject to the section 156 defense. Strict products liability suits under section 221 are actions in tort, not contract. *See Adams v. Buffalo Forge Co.,* 443 A.2d at 940; *cf. Ouellette v. Sturm, Ruger & Co.,* 466 A.2d 478, 483 (Me.1983) ("The non-contractual [warranty] liability resulting from the [statutory] elimination of privity and premised upon a status measured by reasonable foreseeability sounds in tort rather than in contract"). The alternative terms, "act" or "omission," are comprehensive enough to encompass the tort committed by any defendant found liable under section 221. Since that section imposes liability only on the person who sells the product in question, *Stanley v. Schiavi Mobile Homes, Inc.,* 462 A.2d 1144, 1147–48 (Me.1983), there will always be an "act," i.e., the sale of an unreasonably dangerous, defective product, that gives rise to the tort liability imposed by section 221.

.    .    .    .    .

(2) Where damages are recoverable by any person by virtue of the foregoing subsection subject to such reduction as is therein mentioned, the court shall find and record the total damages which would have been recoverable if the claimant had not been at fault.

.    .    .    .    .

4. **Interpretation**
The following expressions have the meanings hereby respectively assigned to them, that is to say—

.    .    .    .    .

"fault" means negligence, breach of statutory duty or other act or omission which gives

rise to a liability in tort or would, apart from this Act, give rise to the defence of contributory negligence.

**6.** The English authority, however, is not helpful in determining what constitutes "fault" on the part of a strict liability claimant in Maine (see part III of this opinion) because before the English Law Reform Act 1945, their courts had held that any type of contributory negligence absolutely barred a strict liability action. *See Caswell v. Powell Duffryn Associated Collieries, Ltd.,* [1939] 3 All E.R. 722.

The 1965 legislative debate is entirely consistent with this interpretation of the comparative negligence statute. Although much of the discussion focused on negligence actions, that concentration undoubtedly resulted from the relative rarity of strict liability suits at that time. More than once legislators referred to analogous rules of contributory negligence in maritime accident and Jones Act cases, 2 Legis.Rec. 2589 (1965), where strict liability often is imposed. *See* G. Gilmore and C. Black, *The Law of Admiralty,* § 6–5, at 278–79, 489–91 (1975); *see, e.g., Lewis v. Timco, Inc.,* 716 F.2d 1425 (5th Cir.1983) (11–3 decision) (comparative fault applied to maritime cases based on strict products liability).

There are no significant conceptual or policy considerations that counsel against giving the section 156 words defining a defendant's fault their ordinary meaning, bolstered as they are by the available legislative history. Very recently, the Fifth Circuit Court of Appeals, sitting en banc, surveyed the arguments put forth in opposition to applying comparative fault principles in a strict liability action. That court noted that, despite those arguments,

> the majority of state courts and federal courts sitting in diversity that have faced this issue have held that comparative fault, as adopted by the legislature or the courts, should be applied to actions founded on strict products liability.

*Lewis v. Timco, Inc.,* 716 F.2d at 1429.

■ It is often argued, as it is here, that instructing a jury to compare a claimant's contributory negligence with a defendant's strict products liability imposes on the jury the impossible task of comparing noncomparables. This "apples and oranges" argument is more imaginary than real; any problem is "linguistic rather than analytical." *See* Powers, *The Persistence of Fault in Products Liability,* 61 Tex.L.Rev. 777, 802 (1983). A strict products liability statute such as section 221 does relieve a plaintiff of the burden of establishing that the de-

fendant failed to exercise due care "in the preparation and sale of his product." Nonetheless, the plaintiff is still required to prove that the product in question was defective and unreasonably dangerous. The seller of such a product commits a wrongful act by putting such a product into the stream of commerce. A trier of fact should be able to compare the conduct of the seller of an unreasonably dangerous product with the contributorily negligent conduct of the plaintiff.[7] Professor John W. Wade, chairman of the drafting committee for the Uniform Comparative Fault Act and final reporter for Restatement (Second) of Torts, has made the following pertinent observation:

> Strict liability for both abnormally dangerous activities and for products bears a strong similarity to negligence as a matter of law (negligence per se), and the factfinder should have no real difficulty in setting percentages of fault. Putting out a product that is dangerous to the user or the public or engaging in an activity that is dangerous to those in the vicinity involves a measure of fault that can be weighed and compared, even though it is not characterized as negligence.

Unif. Comparative Fault Act § 1, *Commissioners' Comment,* 12 U.L.A. 37 (Supp.1983).

Thus, so far as the "fault" of the defendant in a strict liability action is concerned, section 156 is properly available for apportionment of the damage suffered by the plaintiff.

### III. *The "Fault" of a Strict Liability Plaintiff*

■ In order to complete our answer to the certified question, we must also determine what "fault" on the part of a plaintiff in a strict liability action will be considered against him in applying section 156. As we have already noted, "fault" on the part of a plaintiff is defined by section 156 expressly in terms of what "would, apart from th[at] section, give rise to the defense

---

**7.** Now addressing the issue a decade later in the context of an actual case, we do not share the concern expressed by this court in *Wing v. Morse,* 300 A.2d 491, 500 n. 10 (Me.1973).

of contributory negligence." *See Wing v. Morse,* 300 A.2d at 499. Thus, the comparative negligence statute does not create any new defenses. *Id.* Its sole purpose is to eliminate the harsh, all-or-nothing consequence of the contributory negligence defense. The statutory language, "apart from this section," places upon this court the task of determining under Maine law to what extent, if any, the defense of contributory negligence would be available in an action under section 221, if section 156 had never been enacted. Stating the question in that fashion, we are led to conclude, for the purposes of answering the question now certified to us, that contributory negligence consisting merely in a failure to discover the defect in the product or to guard against the possibility of its existence is not "fault" of the plaintiff under section 156; but that on the other hand contributory negligence of a form commonly passing under the name of assumption of the risk,[8] consisting in voluntarily and unreasonably proceeding to encounter a known danger, does constitute such "fault."

■ Maine's section 221 derives almost verbatim from the black letter of section 402A of the *Restatement (Second) of Torts* (1965). *See Adams v. Buffalo Forge Co.,* 443 A.2d at 940. Section 221 does not have anything to say about what defenses are available to a strict products liability claim.[9] Mrs. Austin contends that the legislature

intended *sub silentio* to limit defenses to strict liability in exactly the way set forth in comment that accompanied the black letter of the *Restatement's* section 402A. That comment n reads in full as follows:

   n. *Contributory negligence.* Since the liability with which this Section deals is not based upon negligence of the seller, but is strict liability, the rule applied to strict liability cases (see § 524) applies. Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence. On the other hand the form of contributory negligence which consists in voluntarily and unreasonably proceeding to encounter a known danger, and commonly passes under the name of assumption of risk, is a defense under this Section as in other cases of strict liability. If the user or consumer discovers the defect and is aware of the danger, and nevertheless proceeds unreasonably to make use of the product and is injured by it, he is barred from recovery.[10]

We reject Mrs. Austin's argument in its full implications. The legislature cannot be treated to have enacted something that they patently refrained from enacting. By its silence on questions of defense, the legislature has elected to leave to this court the task of enunciating, by the traditional case-

---

**8.** We do not here consider or decide the question whether "misuse" by the claimant, which traditionally will defeat a strict liability claim, *see Restatement (Second) of Torts* § 402A, comment h (1965); W. Prosser, *Law of Torts* 668–69 (4th ed. 1971), is encompassed within "the defense of contributory negligence" for the purpose of the definition of a plaintiff's fault under section 156.

**9.** In view of section 221's silence as to what defenses are available, one might conceivably argue that once the plaintiff succeeds in proving the elements of a cause of action within the terms of section 221, the defendant may assert no defense whatever based upon conduct of the plaintiff that contributed to his damages. This argument—which Mrs. Austin's counsel does not attempt—is quickly answered. In enacting section 221, the legislature took over, directly

from the black letter of the *Restatement's* section 402A, the phrase "subject to liability," a form of expression used by the American Law Institute to signal that the black letter of a section does not encompass available defenses. *See Restatement (Second) of Torts* § 5 (1965).

**10.** Section 524 of *Restatement (Second) of Torts* (1965), which is referred to in comment n quoted above, reads as follows:

   § 524. Contributory Negligence
   (1) *Except as stated in Subsection (2),* the contributory negligence of the plaintiff is not a defense to the strict liability of one who carries on an abnormally dangerous activity. (2) The plaintiff's contributory negligence in knowingly and unreasonably subjecting himself to the risk of harm from the activity is a defense to the strict liability.

by-case, common law techniques, those defenses that are available in section 221 cases.

On the other hand, the *Restatement's* comment n, and section 524 to which it refers, are instructive on the state of the common law of strict liability defenses in 1973 when the legislature enacted section 221 delineating the elements of a cause of action in strict products liability. We recognize that the legislative history of our strict liability law adds force to the usual respect any court should accord comment n as the scholarly work product of the American Law Institute. At the very least, comment n demonstrates two principles of the common law of strict liability against which the 1973 Legislature enacted section 221: first, that assumption of the risk, consisting "in voluntarily and unreasonably proceeding to encounter a known risk," is a defense to a strict liability claim and, second, that such assumption of the risk is a "form of contributory negligence." The first principle finds wide support in the authorities. *See Henderson v. Ford Motor Co.,* 519 S.W.2d 87, 90 (Tex.1974); 2 L. Frumer & M. Friedman, *Products Liability* § 16A[5][f], at 3B–210.1 (November 1980); W. Prosser, *Law of Torts* § 79, at 523 (4th ed. 1971); *cf. Sandy v. Bushey,* 124 Me. 320, 323, 128 A. 513, 514 (1925) ("injured party's unnecessarily and voluntarily putting himself in a way to be hurt knowing the probable consequences of his act" bars him from asserting strict liability of the owner of a known vicious animal). The second principle, as applied specifically to the section 156 definition of a plaintiff's fault is identical to the holding of *Wilson v. Gordon,* 354 A.2d 398, 401–03 (Me.1976), that voluntary (as distinguished from contractual) assumption of the risk is no longer recognized in Maine separate from contributory negligence. Noncontractual assumption of the risk is a type of contributory negligence for purposes of section 156. Thus, contributory

negligence of the nature that formerly was separately denominated "assumption of the risk" is a defense to a strict liability claim and so counts as "fault" on the part of Mr. Austin under section 156.

To complete our answer to the certified question, we are still left with a final question as to Mr. Austin's "fault": Does any contributory negligence of Mr. Austin other than assumption of the risk constitute a defense to this strict products liability claim? As we understand the evidence in the pending federal case, the answer is no. Undoubtedly, comment n correctly summarized the common law in 1965 when it stated:

Contributory negligence of the plaintiff is not a defense when such negligence consists merely in a failure to discover the defect in the product, or to guard against the possibility of its existence.

*Restatement (Second) of Torts* § 402A, comment n. Cases decided since publication of section 402A have almost uniformly declared the same principle in absence of any comparative fault rule moderating the draconian result of a contributory negligence defense. *See Smith v. Smith,* 278 N.W.2d 155, 160–61 (S.D.1979); Powers, 51 Tex.L. Rev. at 799; Prosser, *supra* at 522. Recent cases typified by *Daly v. General Motors Corp.,* 20 Cal.3d 725, 575 P.2d 1162, 144 Cal.Rptr. 380 (1978) (ordinary contributory negligence of plaintiff to be considered in apportioning damages), are not authorities for a contrary answer to the question we are now addressing. Before *Daly,* the California Supreme Court by case decision had developed both strict products liability[11] and "pure" comparative fault apportionment of tort damages.[12] In that context *Daly* represents the California court's completion of the judicial evolution of a consistent body of products liability law. In contrast, in Maine both the strict liability and comparative negligence rules have been legislatively imposed, with their own special

11. *See Greenman v. Yuba Power Products, Inc.,* 59 Cal.2d 57, 377 P.2d 897, 27 Cal.Rptr. 697 (1962).

12. *See Li v. Yellow Cab Co.,* 13 Cal.3d 804, 532 P.2d 1226, 119 Cal.Rptr. 858 (1975).

constraints. By our analysis, those statutes leave us only to determine whether contributory negligence would be a defense to strict liability in the absence of section 156. Any contributory negligence on Mr. Austin's part consisting merely in failing to discover the defect in the asbestos product or to guard against the possibility of its existence is not a defense to the section 221 claim and so is not "fault" of the plaintiff under section 156.

■ Limiting the contributory negligence defense in a section 221 action is not only mandated by the statutory language of the comparative negligence statute, but also results in an otherwise desirable approach to damage allocation in strict liability actions. To penalize a consumer for a failure to discover or to guard against a defect places a burden on him that the doctrine of strict products liability intended to remove. Products placed in commerce are presumed to be reasonably safe. Section 221 places an obligation on manufacturers and suppliers to market reasonably safe products. The seller becomes subject to liability if an unreasonably dangerous product causes injury. There is no reason why a plaintiff should be expected to inspect products for defects or to guard against them.

■ In conclusion, we answer the certified question as follows:

Yes; section 156 is applicable to plaintiff's strict liability claim, to the extent of requiring comparison of defendant's fault, if any, under section 221 with Blaine Austin's fault, if any, consisting in voluntarily and unreasonably proceeding to encounter a danger known to him.

The Clerk will transmit these instructions to the District Court of the United States, District of Maine.

So ordered.

All concurring.