**William McLAIN**

v.

**TRAINING AND DEVELOPMENT CORP.**

Supreme Judicial Court of Maine.

Argued Feb. 2, 1990.

Decided April 2, 1990.

Joseph M. Jabar (orally), Daviau, Jabar & Batten, Waterville, for plaintiff.

Edward W. Gould (orally), Gross, Minsky, Mogul & Singal, Bangor, for defendant.

Before McKUSICK, C.J., ROBERTS, GLASSMAN, HORNBY and COLLINS, JJ.

McKUSICK, Chief Justice.

Training and Development Corporation (TDC) appeals from a $250,000 judgment entered against it in favor of William McLain following a jury trial in Superior Court (Penobscot County, *Chandler, J.*). Finding TDC's contentions on appeal without merit, we affirm.

William McLain was 21 years old when, in January 1983, he entered the Job Corps Program in Bangor, run jointly by TDC and the Penobscot Consortium, with the express goal of improving his reading and writing skills to enable him to pass the entrance exam for the U.S. Marine Corps. As part of the Job Corps Program McLain was assigned a Job Training Counselor, Thomas Hebert, who told McLain that he could get into the Marines through physical "tests" despite having twice previously failed the written entrance exam. Hebert told McLain not to tell anyone of this secret way into the Marines or both of them would be "in trouble."

From February through April 1983, Hebert engaged McLain in several "progress reports" and two "tests" that required McLain to perform a number of bizarre physical activities and inflicted upon him substantial pain and humiliation. Following the second test, performed according to

Hebert in front of secret "recruiters" whom McLain neither saw nor spoke to, Hebert told McLain that his admission to the Marines was assured.' When McLain later went to an armed forces recruiting center, he again failed the written entrance exam and again was denied admission to the Marines. McLain confronted Hebert and several other staff members, and his mother contacted TDC and the District Attorney. TDC immediately fired Hebert, but McLain left the program.

About a year later McLain filed suit against TDC and the Penobscot Consortium, alleging fifteen counts of personal injury arising from the tortious conduct of TDC's employee Hebert. When trial began, however, the court on McLain's motion dismissed the Penobscot Consortium and dismissed all but four counts of the complaint. McLain proceeded to trial on two principal theories of TDC's liability for the consequences of Hebert's conduct[1]: TDC's direct negligence in its hiring and supervision of Hebert, and its vicarious liability for the negligence and assault and battery of Hebert acting as TDC's employee. Under any theory McLain claimed from TDC full compensatory damages for all of the injuries he had suffered at Hebert's hands.

Before the jury retired, the court instructed it to consider McLain's comparative fault only with regard to his negligence claims against TDC, and not with regard to TDC's liability for any intentional tort.[2] Using a special verdict form, the jury found TDC liable for both negligence and the intentional tort of assault and bat-

tery. The jury set McLain's damages at $250,000, but then reduced that amount to $105,000 by deducting what it thought "a just and equitable sum having regard to [McLain's] fault" that contributed to his own injuries. Because the jury found TDC liable for assault and battery, however, the court entered judgment in the full amount of $250,000, on the theory that the Maine comparative fault statute does not apply to intentional torts.

## I.

On appeal TDC contends that the Superior Court erred in refusing to instruct the jury to consider McLain's comparative fault with regard to the assault and battery count and in refusing to enter a reduced judgment of $105,000 following the jury's assessment of McLain's comparative fault. We disagree. In *Wing v. Morse*, 300 A.2d 491 (Me.1973), and again in *Austin v. Raybestos–Manhattan, Inc.*, 471 A.2d 280 (Me.1984), we held that 14 M.R.S.A. § 156, the comparative fault statute, contains two separate definitions of "fault," one for the defendant and one for the plaintiff.[3] The definition of a defendant's fault, phrased in terms of the nature of the claim against him, is broadly inclusive of any "act or omission which gives rise to a liability in tort." *Id.* Under the broad sweep of that language, section 156 would apply to the intentional tort of assault and battery committed by the defendant. Our analysis cannot stop there, however. For the comparative fault statute to apply, the plaintiff's negligence to be compared with the defen-

---

1. Plaintiff McLain also asserted that TDC negligently inflicted emotional distress upon him and negligently failed to mitigate his damages by offering counseling after revelation of Hebert's misdeeds. In the alternative, plaintiff McLain pleaded intentional infliction of emotional distress.

2. McLain's counsel objected to any comparative fault instruction; TDC's counsel objected to the court's refusal to instruct the jury that comparative fault could be considered with regard to the intentional tort counts as well as with regard to the negligence counts.

3. 14 M.R.S.A. § 156 (1980) provides in pertinent part:

Where any person suffers death or damage as a result partly of his own fault and partly of the fault of any other person or persons, a claim in respect of that death or damage shall not be defeated by reason of the fault of the person suffering the damage, but the damages recoverable in respect thereof shall be reduced to such extent as the jury thinks just and equitable having regard to the claimant's share in the responsibility for the damage.

. . . .

Fault means negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort or would, apart from this section, give rise to the defense of contributory negligence.

dant's intentional tort must constitute "fault" as defined under section 156 to be an "act or omission [of the plaintiff] which ... would, apart from th[is] section, give rise to the defense of contributory negligence." *Austin,* 471 A.2d at 285–86 (citing *Wing,* 300 A.2d at 499). In the case at bar the question thus becomes whether, at common law, contributory negligence was a defense to an intentional tort. *See Austin,* 471 A.2d at 286; *Wing,* 300 A.2d at 499.

■ From a review of the law prevailing prior to the enactment of section 156, it appears without exception that "[c]ontributory negligence never has been considered a good defense to an intentional tort such as a battery, and it would likewise appear contrary to sound policy to reduce a plaintiff's damages under comparative fault for his 'negligence' in encountering the defendant's deliberately inflicted harm." *Prosser & Keaton on Torts* § 67, at 477–78 (5th ed. 1984). *See also Restatement (Second) of Torts* § 481, at 537 (1965) ("The plaintiff's contributory negligence does not bar recovery against a defendant for a harm caused by conduct of the defendant which is wrongful because it is intended to cause harm to some legally protected interest of the plaintiff"). Our own case law is in accord with these principles. Indeed, we have expressly recognized that even short of an intentionally tortious action, "contributory negligence, that is, lack of due care, does not bar recovery for wanton misconduct." *Blanchard v. Bass,* 153 Me. 354, 362, 139 A.2d 359, 363 (1958). *See also Moses v. Scott Paper Co.,* 280 F.Supp. 37 (D.Me.1968) (under Maine's comparative fault statute wanton misconduct by the defendant allows the plaintiff to recover regardless of the plaintiff's contributory negligence). We have never recognized contributory or comparative negligence as a defense to the intentional tort of assault and battery and we decline to do so now.

■ As stated above, McLain sued TDC on the theories of both negligence and intentional tort. The jury found TDC liable under both theories and was not asked to apportion McLain's damages between them. Although appellant-defendant TDC did preserve its objection to the court's refusal to instruct the jury that the comparative fault statute is to be applied to intentional torts as well as to negligence, TDC at no time, either before that court or before us, has asserted that McLain's damages of $250,000 should be apportioned if it fails in its comparative fault argument. For example, TDC has never asserted that only part of McLain's damages resulted from Hebert's intentional tort, with the other part resulting from negligence. With TDC's complete agreement the jury was directed to return a unitary verdict for total damages without any apportionment for injuries sustained under the different counts of liability. Again, on appeal TDC has made no allegation of error on this point, challenging only the trial court's refusal to apply comparative fault to intentional torts. Thus TDC as appellant fails to establish any error of law in the judgment entered by the Superior Court for McLain's total damages found by the jury to be $250,000.

## II.

On appeal TDC further contends that although the court initially instructed the jury correctly on the scope-of-employment doctrine as set forth in *Restatement (Second) of Agency* § 228, at 504 (1958), the court erred by also stating that the jury could consider, in determining whether Hebert had acted within the scope of his employment, whether Hebert "was aided in accomplishing what he did because of the fact that he bore the employee relationship to the employer." TDC points out that this instruction, based upon section 219(2)(d) of the same *Restatement,*[4] properly pertains

---

4. *Restatement (Second) of Agency,* § 219, at 481 (1958) provides in pertinent part:

(1) A master is subject to liability for the torts of his servants committed while acting in the scope of their employment.

(2) A master is not subject to liability for the torts of his servants acting outside the scope of their employment, *unless:*

. . .

(d) the servant purported to act or to speak on behalf of the principal and there was re-

only to employer responsibility for conduct of an employee acting outside the scope of his employment, and argues that since McLain premised his entire case on the theory that Hebert was acting within the scope of his employment, the instruction was materially and prejudicially erroneous.

 Although the court committed literal error in treating the section 219(2)(d) instruction as a factor in determining whether Hebert's action came within the scope of his employment, we find this error harmless. Evidence presented by both parties generated the section 219(2)(d) instruction and, based on that evidence, the jury without more could find TDC vicariously liable for McLain's injuries—the same result as flows from a finding that Hebert acted within the scope of his employment by TDC.

Further, the court did not err, as TDC contends, in refusing to give the apparent authority instruction requested by TDC in conjunction with the scope of employment instruction. TDC requested this instruction after alleging that the court "got into" apparent authority when instructing the jury pursuant to section 219(2)(d). Since at trial neither of the parties argued the apparent authority issue or generated evidence thereon, the court did not err in refusing to give the requested instruction. *See Hodgdon v. Jones,* 538 A.2d 281, 283 (Me.1988); *Johnson v. Gerrish,* 518 A.2d 721, 724 (Me.1986); *Schneider v. Richardson,* 438 A.2d 896, 897 (Me. 1981).

### III.

Contrary to TDC's final contention on appeal, the jury's findings of TDC's liability on either of McLain's theories of recovery are adequately supported by the evidence at trial. *See Harmon v. Emerson,* 425 A.2d 978, 982 (Me.1981). On the record before it the jury could rationally find that TDC had failed to supervise Hebert properly. Evidence showed that TDC

liance upon apparent authority, or *he was aided in accomplishing the tort by the existence of the agency relation.*

failed in McLain's case to follow its own procedure for periodic evaluation by a panel of counselors other than Hebert and also that TDC altered its relevant procedures as a result of the Hebert–McLain incident. Also, the jury could rationally find from the evidence that Hebert's employment made possible the tortious assault and battery he imposed upon McLain, rendering TDC liable for all of McLain's injuries at Hebert's hand, on the alternative theory of vicarious liability.

We decline TDC's invitation to second-guess the jury on its assessment of the damages suffered by McLain.

The entry is:

Judgment affirmed.

All concurring.