PRENTISS & CARLISLE COMPANY, INC., Plaintiff, Appellee,

v.

KOEHRING–WATEROUS DIVISION OF TIMBERJACK, INC., Defendant, Appellant.

No. 91–2056.

United States Court of Appeals, First Circuit.

Heard March 4, 1992.

Decided Aug. 6, 1992.

Michael J. Gonring with whom Margaret C. Kelsey, Quarles & Brady, Milwaukee, Wis., Karen Frink Wolf and Friedman & Babcock, Portland, Me., were on brief, for defendant, appellant.

Daniel Q. Harrington with whom Cozen and O'Connor, Philadelphia, Pa., Phillip D. Buckley and Rudman & Winchell, Bangor, Me., were on brief, for plaintiff, appellee.

Before TORRUELLA, Circuit Judge, CAMPBELL and BOWNES, Senior Circuit Judges.

LEVIN H. CAMPBELL, Senior Circuit Judge.

Following a jury trial, the District Court for the District of Maine entered judgment against Koehring–Waterous Division of Timberjack, Inc. ("Timberjack") on a breach of express warranty claim brought by Prentiss and Carlisle Company, Inc. ("Prentiss"). Timberjack appeals, alleging numerous trial errors and challenging the sufficiency of the evidence. We affirm.

## I.

Prentiss is a forest products company. In February 1989, it purchased a timber harvesting machine that had been manufactured by Timberjack. The machine, known as a fellerbuncher, saws off trees at the

stump and lays them down in bunches so they can be skidded out of the forest.

Timberjack expressly warranted that the fellerbuncher would be "free from defects in material and workmanship" and that it would repair or replace "any part proving defective under normal use and service within 12 months or 2000 hours of operation, whichever period first expires...." On May 18, 1989, after about 400 hours of use, Prentiss employee Lawrence Milton was operating the fellerbuncher when it suddenly lost power. Unable to restart the machine, Milton walked to his truck to radio for help. When he returned a half hour later, the fellerbuncher was on fire. Milton was unable to put out the fire, and the fellerbuncher was almost completely destroyed.

Prentiss's theory of the case was that the machine must have had a defect or it would not have suddenly lost power and then caught fire after 400 hours of use. An expert witness testified for Prentiss that an electrical short circuit caused the machine to lose power, started the fire and hindered the proper functioning of the fire suppression system. Timberjack, in addition to impeaching the expert's theory, contended that Milton should have turned off the master switch before leaving the fellerbuncher unattended. Had he done so, according to Prentiss's own expert, all power would have been shut off, and the fire would not have occurred.

We consider Timberjack's arguments in turn.

## II.

### A. *Discovery and Expert Witness Issues*

■ Prentiss's expert, Dr. David Pesuit, testified that the rubbing of the throttle cable against a magnetic switch known as a solenoid had caused a short circuit, which started the fire. Central to Pesuit's opinion were two premises: first, that the throttle cable was routed through the en-gine so that it could be bent over the solenoid, and, second, that this short circuit would not have allowed power to reach the starter.

Timberjack sought to refute these two premises through the testimony of its employee, Roy Hayes. Hayes testified that he had examined a fellerbuncher engine of the same type as that purchased by Prentiss and that the throttle cable was not routed as Pesuit had said. However, the district court refused to allow Hayes to testify that 1) he had been unable to bend the throttle cable over the solenoid, and 2) he had done an experiment creating the same short circuit theorized by Pesuit and that power had reached the starter. The district court concluded that this would be expert testimony. Because Hayes had not been designated an expert witness, the court found Prentiss's counsel had had no notice that he would testify as to these experiments. *See* Fed.R.Civ.P. 26(b)(4) and (e)(1)(B) (regulating discovery relating to expert witnesses and requiring disclosure and updating of their identity and expected testimony).[1] The court, therefore, excluded this testimony.

Prentiss argues that Hayes's proffered testimony was not expert testimony because Hayes merely sought to relay his personal knowledge concerning tests he had performed, without offering an opinion or testifying based on hypothetical facts.

We are not persuaded. "[T]he trial judge has broad discretion in the matter of the admission or exclusion of expert evidence, and his action is to be sustained unless manifestly erroneous." *Salem v. United States Lines Co.*, 370 U.S. 31, 35, 82 S.Ct. 1119, 1122, 8 L.Ed.2d 313 (1962). We think this discretion extends to determining whether, in this context, testimony recounting an experiment undertaken by the witness should be allowed only as expert testimony, and, therefore, subject to the applicable discovery rules. The relevance of the experiments which Hayes performed here depended on his having used a

---

**1.** In addition, the court's discovery order set a specific deadline for the designation of expert witnesses.

machine that was a true exemplar, and his having recognized and properly described results in a technical area beyond an ordinary person's understanding. Thus, the district court could reasonably have concluded that a showing of Hayes's expert qualifications was required in order to establish that he was competent both to perform the experiments at all and to do so under conditions that reasonably approximated those at issue in the case. *See Rosemount, Inc. v. Beckman Instruments, Inc.*, 727 F.2d 1540, 1549 (Fed.Cir.1984) (affirming district court's refusal to allow witness not listed as expert to testify concerning tests of a product involved in patent litigation).

In the alternative, Timberjack claims that Hayes's testimony should have been admitted as a remedy for Prentiss's earlier discovery violation. Timberjack claims that Prentiss failed to comply with Fed.R.Civ.P. 26(b)(4) and 26(e) by failing to disclose that Pesuit had conducted certain tests. According to Timberjack, Pesuit's mention of these undisclosed tests during cross-examination bolstered his credibility, and it was, therefore, crucial that Timberjack be allowed to present evidence of Hayes's tests to show that Pesuit's tests were flawed.

Assuming, arguendo, that Prentiss did commit a discovery violation, we are satisfied that the district court did not abuse its discretion by failing to give the remedy Timberjack sought. *See Johnson v. H.K. Webster, Inc.*, 775 F.2d 1, 8 (1st Cir.1985) (noting district court's "discretion to control discovery and the admission of evidence" in context of Rule 26(e)); *Phil Crowley Steel Corp. v. Macomber, Inc.*, 601 F.2d 342, 344 (8th Cir.1979) (remedy for breach of Rule 26(e) discovery requirements is committed to sound discretion of district court). Timberjack's argument is premised on the contention that it was prejudiced by Pesuit's testimony concerning the tests. However, this testimony was elicited by Timberjack itself. No specific mention was made of the tests until Pesuit answered a question on cross-examination. Timberjack's counsel protested to the court

that "[Pesuit] should not be allowed to testify about this test." The court responded that "you're asking the questions," and counsel thereupon elected to cross-examine Pesuit in detail about the tests, rather than seek a ruling preventing any further reference thereto. Thus, even if Prentiss did commit a discovery violation, the district court could reasonably determine that the prejudice Timberjack now claims to have suffered was created by Timberjack itself. The district court did not, therefore, abuse its discretion when it declined to remedy any discovery violation by allowing Hayes's testimony.

### B. *Subsequent Remedial Measures*

Shortly after the fire, Timberjack employees went to the site to investigate. These investigations resulted in a number of documents which pointed to the same cause of the fire as that posited by Prentiss at trial: contact between the throttle cable and solenoid. The documents included an interoffice memo stating that "we found the throttle cable arced across starter terminals" and a "service letter" to Timberjack's customers stating that the throttle cable could become bare of insulation and contact the battery terminal, and advising customers to reroute the cable.

Timberjack sought to exclude this evidence pursuant to Fed.R.Evid. 407, which provides that:

> When, after an event, measures are taken which, if taken previously, would have made the event less likely to occur, evidence of the subsequent measures is not admissible to prove negligence or culpable conduct in connection with the event. This rule does not require the exclusion of subsequent measures when offered for another purpose, such as proving ownership, control, or feasibility of precautionary measures, if controverted, or impeachment.

The district court held that, although Rule 407 applied to this warranty action, redacted portions of the documents could nevertheless be admitted because certain documents and selected parts of other documents discussed only Timberjack's analy-

sis of the problem, without mentioning any remedial measures suggested. The district court concluded that an analysis of the problem was not a "measure" within the meaning of the rule, and admitted the redacted documents.[2]

[3–5] Like the majority of circuits, this court has held that Rule 407 applies to strict product liability actions. *Raymond v. Raymond Corp.*, 938 F.2d 1518, 1522 (1st Cir.1991). Assuming, arguendo, that Rule 407 would likewise apply to an express warranty action, we agree with the district court that the redacted documents admitted were not remedial measures of the sort excluded by the rule. The Rule prohibits "evidence of . . . subsequent *measures*," not evidence of a party's analysis of its product. *See Rocky Mountain Helicopters v. Bell Helicopters*, 805 F.2d 907, 918 (10th Cir.1986) (upholding admission of post-accident tests of allegedly defective product because "[i]t would strain the spirit of the remedial measure prohibition in Rule 407 to extend its shield to evidence contained in post-event tests or reports"). The fact that the analysis may often result in remedial measures being taken (as occurred here) does not mean that evidence of the analysis may not be admitted. *See Benitez–Allende v. Alcan Alumino Do Brasil, S.A.*, 857 F.2d 26, 33 (1st Cir.1988) (upholding admission of test of allegedly defective product even though test was used to plan voluntary recall of product following accident), *cert. denied*, 489 U.S. 1018, 109 S.Ct. 1135, 103 L.Ed.2d 196.[3]

### C. *Jury Instructions*

Timberjack alleges two errors in the jury instructions. First, the district court denied Timberjack's request, after the charge was read, for an instruction on comparative

fault.[4] Timberjack argues that Milton's failure to turn off the master switch was a legal cause of the fire, and that the court should have given an instruction allowing the jury to evaluate this failure under comparative fault principles.

Maine's comparative fault statute applies to actions based on "fault," which is defined as "negligence, breach of statutory duty or other act or omission which gives rise to a liability in tort. . . ." Me. Rev.Stat.Ann. tit. 14, § 156. The Supreme Judicial Court of Maine has held that this statute applies to statutory strict products liability actions, *see Austin v. Raybestos–Manhattan, Inc.*, 471 A.2d 280 (Me.1984), but has reserved decision on whether it applies to express or implied warranty actions, *see Maietta v. International Harvester Co.*, 496 A.2d 286, 291 n. 4 (Me. 1985). Even assuming, arguendo, that the statute does apply to this express warranty action, the evidence did not warrant a comparative negligence charge.

A jury instruction should not be given if there is not sufficient evidence to support it. *Gillentine v. McKeand*, 426 F.2d 717, 723 (1st Cir.1970); *Feemster v. Dehntjer*, 661 F.2d 87, 90 (8th Cir.1981). Here, even if comparative fault applied, it would have applied only in the following "limited way," 471 A.2d at 281, set forth in *Austin:*

> contributory negligence consisting merely in a failure to discover the defect in the product or to guard against the possibility of its existence is not "fault" of the plaintiff under section 156; but . . . on the other hand contributory negligence of a form commonly passing under the name of assumption of the risk, consisting in voluntarily and unreasonably pro-

---

**2.** Because we find this reason sufficient to uphold the district court's ruling, we need not consider the district court's conclusion that the documents were also admissible because they tended to show causation rather than negligence.

**3.** Timberjack also contends that the documents were not admissible as "admissions," in an apparent reference to the rules of evidence concerning hearsay. However, the district court

could reasonably have concluded that the documents were admissible as employee admissions under Fed.R.Evid. 801(d)(2)(D).

**4.** The record indicates that the district court believed that comparative fault did not apply to an express warranty action, although it appears to have decided against the instruction during a charging conference which took place off the record.

ceeding to encounter a known danger, does constitute such "fault."

*Id.* at 286.[5] In this case, there was no evidence from which the jury could have found that Milton's failure to turn off the switch constituted an assumption of risk.

The master switch controlled the flow of power to the fellerbuncher. Turning it off would have shut down all power to the machine, and, according to Pesuit, if Milton had done so, the fire would not have occurred. However, Pesuit also testified that, absent any electrical defect, there was no hazard associated with leaving the master switch on. The only testimony as to any reason for turning off the master switch came from two Prentiss employees. Milton testified only that he knew he "should" turn the switch off when he left the machine for any length of time. Another Prentiss employee testified that, when training machine operators, he "suggested it would be a good idea" to turn the switch off. None of this evidence suggests that any Prentiss employee knew of any fire or other hazard associated with leaving the switch on, nor does it contradict Pesuit's contention that there was none. Given this evidence, failure to turn off the switch was, at most, a failure to "guard against the possibility of [a defect's] existence," rather than a "voluntary and unreasonable" exposure to a "known danger." There was no basis for a comparative fault instruction.

■ Timberjack's second challenge to the jury instructions fails for similar reasons. The district court refused to give Timberjack's requested instruction concerning intervening cause, holding that the master switch issue was adequately covered in its instructions on defect and legal cause, and that there was no evidence from which the jury could find an intervening cause.[6] Even, assuming, arguendo, that intervening cause applies to this express warranty case, we agree with the district court that no such charge was warranted.

First, as the district court noted, the master switch issue was covered by the question of defect. The jury could have found that an almost new $235,000 machine equipped with a fire suppression system is defective if it can catch on fire for no apparent reason other than the failure to turn the power off.

Moreover, there was no evidence to support the charge. Timberjack's proposed charge defined intervening cause as one which is "neither anticipated nor reasonably foreseeable," and "operates independently of any fault on the part of the defendant." With respect to the former, the master switch had to be turned on for the fellerbuncher to work, so that it was clearly foreseeable to Timberjack that the switch would be on for significant periods of time. Similarly, because the switch was an integral part of the electrical system which had to be on for the machine to work, leaving the switch on could not be said to operate "independently" of any electrical defect.[7]

### D. *Other Alleged Errors*

Timberjack's final two assignments of error are without merit. We cannot say that the district court abused its discretion in admitting warranty records to show that

---

5. As noted above, *Austin* was a strict products liability case. Nevertheless, we think the limited definition of contributory negligence established in *Austin* would apply to an express warranty case, assuming contributory negligence applies at all in such a case. *See* 1A Frumer and Friedman, *Products Liability,* § 3.01[5], p. 3–72 ("[i]n the case of an *express* warranty, contributory negligence should clearly not be a defense, where the injury results from an unknown defect warranted against, and the contributory negligence consists of putting the representation to the test and is not the equivalent of an unreasonable exposure to a known and appreciated risk.") (emphasis in original).

6. An intervening cause (also referred to as a superseding cause) is "an act of a third person or other force which by its intervention prevents the actor from being liable for harm to another which his antecedent negligence is a substantial factor in bringing about." *Restatement (Second) of Torts* § 440.

7. Because Timberjack did not request a sole proximate cause instruction, we need not consider the alleged error in failing to give such an instruction. *See* Fed.R.Civ.P. 51.

Prentiss had taken proper care of the machine. And having carefully reviewed the record, we are satisfied that there was sufficient evidence to support the verdict.

*The judgment of the district court is affirmed. Costs to appellee.*