**Carol GAGNE–FUSCO**

v.

**GENERAL MOTORS CORPORATION.**

No. C–89–569–L.

United States District Court,
D. New Hampshire.

Oct. 27, 1992.

Howard B. Myers, Brown, Olson & Wilson, PC, Concord, N.H., Thomas J. Sweeney Jr., Pietragallo, Bosick & Gordon, Pittsburgh, Pa., for defendant.

Robert K. Mekeel, Cullity, Kelley & McDowell, Manchester, N.H., for plaintiff.

## ORDER

LOUGHLIN, Senior District Judge.

Presently before the Court is defendant's Motion to Produce Evidence (doc. no. 46) and Amended Motion to Produce Evidence (doc. no. 57). A brief reprise of the pertinent facts follows.

This is a products liability action involving the alleged failure of a tie rod ball stud in a 1979 Chevrolet Chevette. The ultimate

issue is whether the stud broke as a result of fatigue thereby causing the car accident involving serious personal injury or whether some other occurrence caused the accident resulting in the stud being broken on impact with a telephone poll. In July, 1992, the case was tried before a jury that was unable to reach a verdict and split on their decision 4 to 4 resulting in a mistrial. Defendant now seeks production of the ball stud from the accident vehicle (Exhibit 16) and the ball stud of the Pontiac T–1000 (Exhibit 18 at trial) for examination by scanning electron microscopy. In addition, defendant seeks to add Donald Wulpi as an expert to conduct the examination.

This case was removed from the Hillsborough County Superior Court to this Court on December 20, 1989. Doc. no. 1. Pursuant to the Court's Pretrial Order of April 17, 1990 (doc. no. 7), plaintiff was instructed to disclose her experts and their reports by November 15, 1990. Defendant was instructed to disclose its experts and their reports by March 15, 1991. Completion of discovery was set for June 1, 1991. Formal discovery was closed in September, 1991. Both parties complied with the discovery schedule which was amended at least once.

In May, 1991, plaintiff's experts were deposed by defendant. In June, 1991, defendant's experts were deposed by plaintiff. By Order of the Court dated June 9, 1992 (doc. no. 19), plaintiff deposed defendant's experts again in June, 1992 due to the Court allowing defendant to introduce evidence from experiments conducted in June, 1992. It is noted that defendant was put on notice as of May, 1991 that plaintiff intended to introduce evidence through her experts concerning the results of scanning electron microscopy examinations.

By Notice of Trial Assignment dated July 24, 1992, this action was scheduled for retrial on November 17, 1992. Settlement negotiations were attempted through mid-September but proved fruitless. The motions at issue in this order followed.

*Discussion*

■ It is common knowledge that " 'District judges live in the trenches, where discovery battles are repeatedly fought.' " *Thibeault v. Square D. Co.*, 960 F.2d 239, 244 (1st Cir.1992). The case *sub judice*, is no exception. For this reason among others, a district court judge is given broad discretion in determining whether to allow or exclude expert evidence. *Prentiss & Carlisle v. Koehring–Waterous Div. of Timberjack, Inc.*, 972 F.2d 6, 8 (1st Cir. 1992) (citation omitted).

■ Defendant contends that there is a substantial likelihood of a second mistrial if the second trial is based on the exact same presentation. Moreover, defendant makes note of the fact that plaintiff seeks an award in the significant sum of eight million dollars which in the defendant's estimation should easily outweigh any claim of inconvenience or additional work. For these reasons, defendant argues that it should be allowed to produce the additional expert evidence.

Plaintiff retorts that these motions are but two more examples of defendant's dilatory discovery strategy employed to gain an unfair tactical advantage given defendant's relatively unlimited financial and tactical litigation resources. In addition, plaintiff maintains that defendant is not seeking to produce evidence but is seeking to add new expert evidence that will require plaintiff to assemble her rebuttal on the eve of trial when time is precious. As to the allowance of a new expert witness, plaintiff claims that prejudice would result as the new information would require time in order to assemble rebuttal when plaintiff does not have the luxury of time with less than thirty days left until the scheduled trial. The courts that have addressed the same or similar issues have made decisions that differ markedly due to the particular circumstances of each case. Nevertheless, a relatively uniform underlying rationale can be gleaned from the decisions that provides a framework offering guidance in the instant matter.

In *Quick v. Myrena Realty Corporation*, 286 A.D. 1008, 145 N.Y.S.2d 41 (1955), the court allowed plaintiff to introduce new evidence after a verdict in favor of plaintiff was set aside. The trial court set aside the

verdict since the only evidence relating to the manner in which the accident occurred was elicited from the unsworn testimony of the infant plaintiff which is inadmissible in a New York civil trial action and is not sufficient to support a verdict. The element of time was not mentioned as a factor influencing the decision to allow new evidence.

Defendant contends that if a trial court will allow new evidence after a verdict is rendered then new evidence should be allowed when a verdict was not reached in the first trial. The Court disagrees. In the *Quick* trial, the jury apparently felt that the plaintiff was harmed by the defendant. Unfortunately, the evidence used as a basis of this finding was inadmissible and therefore insufficient to sustain the verdict. This is clearly distinguishable from the instant case as evidence was introduced by both parties sufficient to sustain a verdict for either party had the jury unanimously decided for one of the two parties. For this reason, the *Quick* decision is not persuasive.

In *Lauritzen v. Atlantic Greyhound Corporation*, 8 F.R.D. 237 (E.D.Tenn. 1948), plaintiffs amended their complaint to set out a new theory of liability prior to retrial which was allowed as it arose out of the same event and thus did not change the cause of action. In addition, plaintiffs sought discovery of certain documents from defendant on the basis of necessity. The district court commented on the belatedness of the motion but nevertheless granted the motion due to necessity.

The *Lauritzen* case is distinguishable from the instant matter on two points. First, there has been no new theory added by defendant in the instant matter. Second, defendant has not alleged necessity although it is clear that defendant can not make an examination of the subject tie rod stud while it is in the custody of plaintiff's counsel. However, defendant had ample opportunity prior to the first trial to make a complete examination of the tie rod stud but chose not to do so. This fact sufficiently nullifies any claim of necessity that could have been made. The *Lauritzen* decision is thus not persuasive.

The third case cited by defendant provides little if any help to this Court. In *Roberts v. Sears Roebuck & Co.*, No. 80 C 5986, 1988 WL 128696, (N.D.Ill. Nov. 21, 1988), the district court simply indicated that the court has the discretion to allow the presentation of new evidence and found that the introduction of new evidence was not overly prejudicial to the objecting party. No other facts surrounding the issue were mentioned thus eliminating any persuasive effect the *Roberts* decision may have had otherwise.

The final case cited by defendant is *Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd.*, 930 F.2d 1021 (2nd Cir.1991). In *Werbungs*, the court of appeals concluded that the case should be remanded for a trial solely on the issue of damages. The court allowed, subject to the *discretion* of the district court, the opportunity for the parties to conduct further discovery in order to ensure a more orderly retrial. A complete reading of the decision reveals that there were substantial problems with discovery on the issue of damages, so much so that sanctions were imposed prohibiting the discovery of certain pertinent documents concerning damages. Although there have been substantial discovery disputes in the instant matter, the conflicts have not resulted in the withholding of evidence necessary to fully try the case to its conclusion. As such, *Werbungs* is sufficiently distinguishable and thus not persuasive.

The case of *Freund v. Fleetwood Enterprises, Inc.*, 956 F.2d 354 (1st Cir.1992) closely approaches in substance the matter of exclusion of expert testimony found in the instant matter. In *Freund*, the district court excluded plaintiff's expert testimony since plaintiff did not notify defendants about the substance of the expert's testimony until the eve of trial. The First Circuit upheld this decision.

This Court has already allowed defendant to introduce evidence on the eve of trial prior to the first trial notwithstanding

plaintiff's strong opposition to such. Defendant again seeks to introduce new evidence when it is patently clear that defendant could have done so long before even the first trial. From the Court's standpoint, allowing defendant to introduce evidence just prior to the first trial was generous at the very least. To seek introduction of that which could have been brought forth at a much earlier date is to now test the Court's patience which is dimming with each new motion submitted on the eve of retrial.

Another case bearing facts similar to the present case is *In re "Agent Orange" Product Liability Litigation*, 97 F.R.D. 542 (E.D.N.Y.1983). In *Agent Orange*, the court denied requests for documents that were brought almost a year after a special master directed the moving party to make such requests. The moving party's requests were denied as a result of the party waiting "until the eleventh hour of discovery" to make their requests. *Agent Orange*, 97 F.R.D. at 543.

One final case that provides guidance to this Court is *Del A. v. Roemer*, 777 F.Supp. 1297 (E.D.La.1991). Recitation of the facts need not be undertaken. What is important is the rationale employed by the district judge (Sear, J.) in denying a motion to compel production of documents filed after the trial had begun. Judge Sear made it crystal clear that the moving party was "not entitled to the production of documents after [the trial had] begun in order to prepare a rebuttal case that was clearly anticipatable prior to trial." *Roemer*, 777 F.Supp. at 1321. In like fashion, the rebuttal case defendants in the instant case desire to put forth is one that was clearly anticipatable long before even the first trial.

It is clear from the cases discussed above that the district court has broad discretion in making discovery rulings. What also emerges after analyzing the cases is a thread of uniformity in the decisions that is based upon the timing of the motion. Motions brought close to trial are generally denied unless there is some other factor or combination of factors that outweigh the prejudicial effect on the nonmoving party. Necessity is an example of such a factor. There is no factor present in the instant matter that could possibly justify granting the motions subject of this order.

Instead, the Court shall harmonize its decision to the purpose of setting time limits on discovery which is to assure both sides the "opportunity immediately before trial to engage in orderly, final trial preparation, uninterrupted by a flurry of 'Midnight' discovery." *King v. Georgia Power Company*, 50 F.R.D. 134, 135–136 (N.D.Ga. 1970). Before rendering a final decision the Court feels obligated to comment on some disturbing aspects of this case. Some of the arguments raised by defendant in the two motions before the Court provide a focal point from which to begin.

One argument raised by defendant which bears further discussion is that there is a substantial likelihood of a second hung jury if the parties are not allowed to introduce new evidence. A second mistrial is certainly possible. However, the Court is inclined to believe that the past history of this case is not necessarily prologue to the upcoming retrial. A new jury will be empaneled that will undoubtedly bring with it different perspectives that derive from the unique circumstances of each juror. That the first jury split provides further support that all three possibilities: verdict for the plaintiff, verdict for the defendant and no verdict, are equally probable. The Court has not been enlightened with the foresight of Nostradamus and thus will not venture to predict any outcome or assume the role of odds-maker in a matter that harbors far too many variables.

Another argument raised by defendant that proves to be most disturbing is that the Court should allow the introduction of this new expert evidence due to the substantial sum sought by plaintiff for damages. Any Court that would adopt this reasoning would undoubtedly lead our system of justice to its destruction. In essence, defendant is asking the Court to do violence to such fundamental timeless concepts as equal justice under the law. To adopt this rationale, the Court would desert

its position as an impartial referee and make decisions based upon the amount of money at stake regardless of the rights of the parties and regardless of the rules promulgated to ensure that each party has an equal opportunity to present its case. The Court will not depart from the course it has been instructed to follow.

Another drastic consequence of adopting such a rationale is the chilling effect it would have on a plaintiff's decision regarding damages. Knowing ahead of time that by seeking a large damage award, plaintiff would be running the risk of having the Court rule on discovery matters in favor of a defendant, it is not farfetched to surmise that a plaintiff would be influenced to seek a smaller damage award even though such plaintiff believes that a larger damage award is in order. It is plaintiff's right to seek what it believes to be a justifiable damage award. Ultimately the jury through its verdict will make the final determination. Should the need arise, the Court through its power of remittitur will ensure that a justifiable verdict is reached.

Plaintiff's counsel comes from a moderate sized firm in Manchester, New Hampshire. A sage judge from the United States District Court of Pennsylvania some years ago stated "you have to be a millionaire to sue in federal court.' Plaintiff never asked to be here; defendant removed the case from the New Hampshire Superior Court.

Defendant General Motors seeks to overwhelm plaintiff with its unlimited legal and financial resources. The Court has grown weary of this heavy-handed approach but will endure what has become a Sisyphean task in order to provide both parties an even playing field from which to make their cases. Accordingly, defendant's Motion to Produce Evidence and Amended Motion to Produce Evidence are hereby denied.