USA v. Levesque                        CR-94-120-M    07/11/95
                    UNITED STATES DISTRICT COURT
                  FOR THE DISTRICT OF NEW HAMPSHIRE


United States of America

       v.                             Criminal No. 94-120-01, 02-M

Jonathan Levesque and
David Boisvert


                          O R D E R


       On December 15, 1994, a federal grand jury returned a four

count indictment against defendants Levesque and Boisvert.  Count

One charges that Levesque and Boisvert unlawfully conspired to

possess with the intent to distribute marijuana, in violation of

21 U.S.C. §846.  Count Two charges that Levesque employed a

firearm in furtherance of a drug trafficking felony, in violation

of 18 U.S.C. §924(c).  Count Four alleges that Levesque, having

been previously convicted of a felony, unlawfully possessed a

firearm, in violation of 18 U.S.C. §922(g)(1).[1]  Before the court

are defendants' motions to suppress various items of evidence.

_____

       [1]  On July 7, 1995, at the close of the suppression hearing,
the government orally informed the court of its agreement to drop
Counts Two and Four of the Indictment.  Count Three of the
Indictment alleged that a third defendant, Robin Boisvert,
employed a firearm in furtherance a drug trafficking felony.  The
government dismissed that Count when the defendant plead guilty
to related charges in state court.  Accordingly, the sole
remaining count of the Indictment is Count One.

**Background.**

On December 8, 1994, at approximately 12:15 p.m., Trooper Richard Jimerson of the Kansas Highway Patrol observed a U-Haul van travelling east on Interstate 70, following closely behind a Dodge pickup truck with New Hampshire license plates. Trooper Jimerson followed the vehicles for approximately six miles and ran a routine registration check on the pickup truck, which revealed that the truck was registered to a person from Concord, New Hampshire. After watching the U-Haul repeatedly veer over the right travel lane marker, Trooper Jimerson stopped it for a traffic violation. The pickup truck did not stop, but continued travelling east.

Trooper Jimerson approached the driver of the van and told him why he had been pulled over. The driver, defendant Boisvert, stated that he was transporting furniture owned by his sister, a student in Arizona, back to New Hampshire. Trooper Jimerson observed that Boisvert was very nervous and noted that he had two hand-held C.B. radios in the cab of the van. He also saw that Boisvert was wearing a paging device on his belt. The trooper asked Boisvert to return with him to the cruiser while he verified the information on Boisvert's license and registration.

2

Trooper Jimerson asked Boisvert if he was traveling to New Hampshire with the pickup truck which he had been following. According to the trooper, Boisvert's nervousness increased and he denied that the two vehicles were traveling together. The check on Boisvert's license and registration revealed that Boisvert had been arrested for possession of narcotics in 1993, in New Hampshire. In response to the trooper's questions, Boisvert denied that he had ever been arrested on narcotics related charges. The trooper returned Boisvert's license and registration and warned him about his erratic driving. He then asked Boisvert whether the van contained any contraband. Boisvert replied that there was nothing of that sort. Trooper Jimerson asked if Boisvert would mind if he looked in the cargo area of the van. Boisvert responded, "No. [pause] I don't even have the key." He explained that his sister had taken the key with her when she flew back to New Hampshire and left instructions with Boisvert not to open the cargo area. When asked if he would permit the trooper to remove the lock securing the doors to the cargo area, Boisvert answered that he would not. Boisvert did agree, however, to permit a search of the cab of the van.

3

Trooper Jimerson's suspicion was aroused and, after Boisvert refused to give his consent to a search of the cargo area, he requested that a drug dog be dispatched to the scene to survey the van and determine whether drugs might be present in the cargo area. Approximately 55 minutes after Trooper Jimerson stopped Boisvert, Trooper Taylor arrived with the drug dog. At the suppression hearing, Trooper Taylor testified that almost immediately upon its arrival at the U-Haul, the drug dog "alerted," indicating that it had picked up the scent of drugs in the cargo area. He also testified credibly that based on his knowledge, experience, and training he had absolutely no doubt that the dog communicated to him that contraband was present in the cargo area of the U-Haul. This statement is supported by the video tape recording of the stop, which was made from Trooper Jimerson's cruiser. The video shows Trooper Taylor directing the drug dog around the U-Haul and, upon completing that task, confidently declaring to the other troopers that drugs are definitely located in the cargo area.

After Trooper Taylor reported to the other troopers that the dog had identified the odor of contraband, they removed the lock which secured the doors to the cargo area. A search of the cargo

4

area uncovered approximately 264 pounds of marijuana, various scales, and other assorted materials. The troopers placed Boisvert under arrest and gave him the <u>Miranda</u> warnings.

Troopers Weigel and Heim were then radioed and asked to stop the New Hampshire pickup truck, which by this time had travelled about 90 miles further east. The truck was intercepted and the operator, Donald Kekich, was placed under arrest. A search of the pickup revealed approximately 64 pounds of marijuana. Kekich agreed to cooperate with the officers and make a controlled delivery of the marijuana to defendant Levesque in Chichester, New Hampshire. When Levesque arrived in Chichester to pick up the marijuana, law enforcement officers placed him under arrest.

On December 10, 1994, pursuant to a search warrant issued by the Concord (New Hampshire) District Court, officers searched Levesque's house, barn, and garage. The search uncovered a quantity of marijuana, a tech 9 manual, a Glock 8mm magazine, ammunition, and various other items. Officers then obtained Kekich's consent to search a storage garage which he had rented in Pembroke, New Hampshire. Kekich told the officers that the

5

garage contained, among other things, a Toyota van and a Jaguar which, although titled in the name of Robin Boisvert, were actually owned by defendant Levesque.  A search of the Toyota van resulted in the seizure of various firearms, ammunition, marijuana, and a number of scales.

Both Levesque and Boisvert challenge the search of the U-Haul van.  They argue that Trooper Jimerson's questioning of Boisvert <u>after</u> he had completed the traffic stop and computer check for outstanding warrants exceeded the constitutionally permissible scope of the stop, in violation of the Fourth Amendment to the United States Constitution.  Levesque also challenges the subsequent searches of the Dodge pickup truck, his home, garage, and barn, and the Toyota van located in the storage facility rented by Kekich.  Levesque claims that these searches were based upon evidence and statements unlawfully obtained as a result of the stop and seizure of the U-Haul van.  As such, Levesque argues that this evidence is inadmissible "fruit of the poisonous tree."  On June 23 and July 7, 1995, the court held an evidentiary hearing on defendants' motions to suppress.

**Discussion.**

6

I.    Levesque's Standing to Challenge the Searches.

Levesque claims that, although he was not present for the search of the U-Haul, the Dodge pickup truck, or the storage facility, he has standing to challenge the constitutionality of those searches.  Specifically, Levesque claims that he paid the $1330 rental fee for the U-Haul van and, by placing the furniture in the cargo area of the van, securing it with a lock, and retaining the only key, he established a possessory interest in the van and made clear his expectation of privacy with regard to its contents.  Levesque also claims that he furnished the funds to purchase the Dodge pickup truck and, although he does not hold legal title to that vehicle, he claims to be the equitable owner. As such, he argues that he has standing to challenge its search.

The government has stipulated to the following facts: (i) On December 5, 1994, Levesque provided Boisvert with the $1330 in cash for the rental of the U-Haul van; (ii) Levesque owned the furniture located in the cargo area of the U-Haul, he loaded those furnishing into the U-Haul, he placed the padlock on the cargo area doors and retained the only key; and (iii) Levesque provided Kekich with the funds to purchase the Dodge pickup truck and instructed Kekich to register it in his (Kekich's) name.

Levesque's standing to challenge the searches is a threshhold issue. Unless he establishes his standing, the "bona fides of the search and seizure are not put legitimately into issue." United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988). In Aguirre, supra, the court of appeals recited the factors which are normally among those considered by district court's in determining whether a defendant has standing to challenge a search and seizure:

> We have often catalogued the sort of factors which are pertinent to this threshold inquiry: ownership, possession, and/or control; historical use of the property searched or the thing seized; ability to regulate access; the totality of the surrounding circumstances; the existence or nonexistence of a subjective anticipation of privacy; and the objective reasonableness of such an expectancy under the facts of a given case.

Id. at 856-57.

For the reasons set forth below, however, the court need not address whether Levesque has standing to challenge the searches and seizures at issue, for, even assuming that he does have standing, the challenged searches and seizures were valid and conducted within constitutional limits.

8

II.  The Search of the U-Haul Van.

In United States v. Place, 462 U.S. 696 (1983), the Supreme

Court discussed the Fourth Amendment's proscription against

unreasonable searches and seizures in the context of a Terry

stop.

> The exception to the probable-cause requirement for
> limited seizures of the person recognized in Terry and
> its progeny rests on a balancing of the competing
> interests to determine the reasonableness of the type
> of seizure involved within the meaning of "the Fourth
> Amendment's general proscription against unreasonable
> searches and seizures."  We must balance the nature and
> quality of the intrusion on the individual's Fourth
> Amendment interests against the importance of the
> governmental interests alleged to justify the
> intrusion.  When the nature and extent of the detention
> are minimally intrusive of the individual's Fourth
> Amendment interests, the opposing law enforcement
> interests can support a seizure based on less than
> probable cause.

Id. at 703 (citations omitted).  More recently, the Court of

Appeals for the First Circuit articulated the analysis which this

court must undertake in determining the validity of a traffic

stop and subsequent nonconsensual search of a vehicle:

> To evaluate the overall reasonableness of this type of
> stop, a "Terry stop", the reviewing court must perform
> a two step inquiry: "the court must first consider
> whether the officer's action was justified at its
> inception; and second, whether the action taken was
> reasonably related in scope to the circumstances which
> justified the interference in the first place."

9

<u>United States v. Kimball</u>, 25 F.3d 1, 6 (1st Cir. 1994) (citations omitted).

The uncontested evidence produced at the suppression hearing demonstrates that Boisvert committed a traffic violation while operating the U-Haul on Interstate 70 -- he failed to maintain the vehicle in a single lane of traffic. <u>See</u> Kan. Stat. Ann. §8-1522.[2]  And, a traffic violation, regardless of its seriousness, provides a law enforcement officer with justification for a traffic stop. <u>United States v. White</u>, 42 F.3d 457, 459 (8th Cir. 1994); <u>Topp v. Wolkowski</u>, 944 F.2d 45, 48 (1st Cir. 1993).  The

---

[2]  Boisvert argues that, when he was stopped by Trooper Jimerson for failing to maintain his vehicle in a single lane of travel, "that section of Kansas was encountering an ice storm and high winds."  Supplement to the Accused's Original Motion to Suppress at 1, ¶2.  Boisvert failed to produce any evidence in support of this assertion at the suppression hearing.  Moreover, both Trooper Jimerson and Trooper Taylor testified credibly that the roads were dry, with some wet spots on the shoulder, and the winds were light (approximately 5 to 8 miles per hour).  This testimony is supported by the video tape recording made of the traffic stop.  Accordingly, the court finds that Boisvert's assertions regarding adverse weather conditions and their effect on his ability to maintain a single lane of travel are without merit.  Moreover, there is simply no evidence to suggest that this was a pretextual stop, by which Trooper Jimerson might have sought to acquire information or evidence against Boisvert regarding some other crime.

10

Court of Appeals for the Tenth Circuit (the circuit in which Kansas is located) has held:

> A traffic stop is an investigative detention analogous to a <u>Terry</u> stop, in that, although probable cause is not required, the detaining officer must have an objectively reasonable articulable suspicion that a traffic violation has occurred or is occurring before stopping the automobile.

<u>United States v. Soto</u>, 988 F.2d 1548, 1554 (10th Cir. 1993). Here, Trooper Jimerson plainly had an objectively reasonable articulable suspicion that Boisvert had committed a traffic violation. Accordingly, the first prong of this two part analysis is satisfied: the trooper's action (stopping the U-Haul) was justified at its inception.

The court must next consider whether the detention of the U-Haul and its subsequent exposure to a trained, drug sniffing canine were reasonable.[3] "The predicate permitting seizures on

---

[3] In <u>United States v. Place</u>, <u>supra</u>, the Supreme Court held that exposure of the defendant's luggage to a trained drug sniffing dog did not constitute a "search" within the meaning of the Fourth Amendment.

> A "canine sniff" by a well-trained narcotics detection dog, however, does not require opening the luggage. It does not expose noncontraband items that otherwise would remain hidden from public view, as does, for example, an officer's rummaging through the contents of

suspicion short of probable cause is that law enforcement interests warrant a limited intrusion on the personal security of the suspect. The test is whether those interests are sufficiently `substantial.'" United States v. Place, 462 U.S. at 704 (citations omitted). Plainly, the government has a substantial interest in preventing the flow of narcotics into channels of distribution. Id. at 704-05. See also, United States v. Mendenhall, 446 U.S. 544, 561 (1980) (Powell, J.) ("The public has a compelling interest in detecting those who would traffic in deadly drugs for personal profit.").

At the time Trooper Jimerson called for the drug dog, he was justifiably suspicious of Boisvert. To that point, he had learned and/or observed that: (i) Boisvert had paid for the rented van with $1,330 in cash; (ii) he professed not to have the

---

the luggage. Thus, the manner in which information is obtained through the investigative technique is much less intrusive than a typical search. Moreover, the sniff discloses only the presence or absence of narcotics, a contraband item. Thus, despite the fact that the sniff tells the authorities something about the contents of the luggage, the information obtained is limited. This limited disclosure also ensures that the owner of the property is not subjected to the embarrassment and inconvenience entailed in less discriminate and more intrusive investigative methods. Id. at 707.

key to the locked cargo area; (iii) he was travelling alone in the U-Haul, but claimed to be transporting a third party's property; (iv) he appeared visibly nervous (heavy breathing and trembling hands), to a greater degree than the ordinary motorist in similar circumstances; (v) he possessed a paging device and short-range C.B. "walkie talkie"; (vi) he lied about his prior arrest on narcotics charges; (vii) his point of origin (Tucson, Arizona) is located near the Mexican border and is known to law enforcement officers as a source of controlled substances; and (viii) he explained the close presence and his apparent tandem travel with the New Hampshire pickup truck (which was equipped with two C.B. antennae) as simply a coincidence.

Although when viewed in isolation each of these facts might be entirely consistent with innocent interstate travel, when viewed as a whole, particularly by a trained police officer, they give rise to a reasonable articulable suspicion that Boisvert was engaged in transporting contraband. Accordingly, Trooper Jimerson was justified in detaining Boisvert's vehicle. See, e.g., United States v. Withers, 972 F.2d 837, 843 (7th Cir. 1992) (defendant's arrival from a city known as a source of drugs, her nervousness, her authorization to search her purse but not to

13

search her garment bag, and her admission regarding a prior arrest for trafficking narcotics all gave officers a reasonable suspicion to conduct an investigative stop); United States v. Glover, 957 F.2d 1004, 1010 (2d Cir. 1992) ("In the case of suspected narcotics trafficking, an officer's suspicion will be reasonable if, considering the totality of the circumstances surrounding the stop, `the conduct would appear suspect to one familiar with the practices of narcotics couriers, albeit the pattern of behavior is innocuous to the untrained observer.'") (citations omitted); United States v. Sterling, 909 F.2d 1078, 1084, 85 (7th Cir. 1990) (defendant's arrival from a city known as a source of drugs, her nervousness, fact that she lied to officers about details of her travel, and fit the "profile" of a drug courier gave officers reasonable suspicion sufficient to justify detention of her suitcase.).

The real issue presented here is whether the detention of the U-Haul was sufficiently brief and, therefore, so minimally intrusive of the defendant's Fourth Amendment rights as to be justified by the strong countervailing government interest in drug interdiction. And, subsumed within that issue is whether

14

the officers acted diligently in attempting to confirm or deny

their suspicion that the U-Haul contained contraband.

> Obviously, if an investigative stop continues
> indefinitely, at some point it can no longer be
> justified as an investigative stop. But our cases
> impose no rigid time limitation on Terry stops. While
> it is clear that "the brevity of the invasion of the
> individual's Fourth Amendment interests is an important
> factor in determining whether the seizure is so
> minimally intrusive as to be justifiable on reasonable
> suspicion," we have emphasized the need to consider the
> law enforcement purposes to be served by the stop as
> well as the time reasonably needed to effectuate those
> purposes. Much as a "bright line" rule would be
> desirable, in evaluating whether an investigative
> detention is unreasonable, common sense and ordinary
> human experience must govern over rigid criteria.

United States v. Sharpe, 470 U.S. 675, 685 (1985) (citations

omitted). The Supreme Court has cautioned district courts not to

engage in overly creative speculation aimed at determining

whether the police might have employed faster or less

inconvenient means to verify or dispel their suspicions.

> In assessing whether a detention is too long in
> duration to be justified as an investigative stop, we
> consider it appropriate to examine whether the police
> diligently pursued a means of investigation that was
> likely to confirm or dispel their suspicions quickly,
> during which time it was necessary to detain the
> defendant. A court making this assessment should take
> care to consider whether the police are acting in a
> swiftly developing situation, and in such cases the
> court should not indulge in unrealistic second-
> guessing. A creative judge engaged in post hoc

15

> evaluation of police conduct can almost always imagine some alternative means by which the objectives of the police might have been accomplished. But "[t]he fact that the protection of the public might, in the abstract, have been accomplished by `less intrusive' means does not, by itself, render the search unreasonable." The question is not simply whether some other alternative was available, but whether the police acted unreasonably in failing to recognize or to pursue it.

United States v. Sharpe, 470 U.S. at 686-87 (citations omitted).

Here, Trooper Jimerson requested that a drug dog be dispatched to his location approximately 10 minutes into the stop. Trooper Taylor and his drug dog arrived at the scene approximately 55 minutes into the stop. In light of all of the factors unique to this traffic stop, including its remote location on Interstate 70, a 55 minute delay in the arrival of the drug dog unit was not unreasonable. Trooper Jimerson acted diligently in attempting to resolve his suspicions regarding the contents of the U-Haul. See, e.g., United States v. Bloomfield, 40 F.3d 910, 917 (8th Cir. 1994) ("When police need the assistance of a drug dog in roadside Terry stops, it will in general take time to obtain one; local government police forces and the state highway patrol cannot be expected to have drug dogs immediately available to all officers in the field at all times.") cert. denied, ___ U.S. ___, 131 L. Ed. 2d 859, 115 S.

16

Ct. 1970 (1995); United States v. White, 42 F.3d 457, 460 (8th Cir. 1994) ("The wait of about one hour and twenty minutes pending arrival of the drug dog was a reasonable period to detain the truck. [The officer] acted diligently to obtain the dog, and the delay was caused only by the remote location of the closest available dog."); United States v. Frost, 999 F.2d 737, 742 (3rd Cir.) (one hour delay of drug dog not unreasonable), cert. denied, ___ U.S. ___, 126 L. Ed. 2d 472, 114 S. Ct. 573 (1993); United States v. Glover, 957 F.2d 1004, 1013 (2d Cir. 1992) (30 minute delay while awaiting arrival of drug dog not unreasonable).

In sum, Trooper Jimerson had reasonable suspicion justifying detention of the U-Haul and the length of the detention was also reasonable. Once the drug dog "alerted," indicating the presence of contraband in the cargo area of the U-Haul, the troopers had probable cause to believe the vehicle contained illegal drugs. United States v. Quinn, 815 F.2d 153, 159 (1st Cir. 1987). The subsequent search was, therefore, justified by the "automobile exception" to the search warrant requirement. Chambers v. Maroney, 399 U.S. 42 (1970); see also United States v. Ross 456 U.S. 798, 809 (1982) ("the exception to the warrant requirement

17

established in <u>Carroll</u> -- the scope of which we consider in this case -- applies only to searches of vehicles that are supported by probable cause.  In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.").

III. <u>The Search of the Dodge Pickup Truck</u>.

At the suppression hearing, Trooper Weigel testified that on December 8, 1994, he received a radio transmission requesting that he stop the Dodge pickup truck and arrest the driver. Trooper Weigel stated that he subsequently stopped the truck and arrested the driver, Donald Kekich, for his role in transporting the contraband discovered in the U-Haul.  He observed that the pickup truck had been recently painted and detected the pronounced odor of marijuana emanating from the rear of the truck.  He then removed the tail light from the truck and discovered a package of marijuana.  When he confronted Kekich with this contraband, Kekich expressed a willingness to cooperate with the officers in setting up a controlled delivery of the marijuana to Levesque in New Hampshire.

18

The issue presented here is whether officer Weigel had probable cause to arrest Kekich and, therefore, to search the pickup truck for illegal drugs. It is well established that, "[w]here law enforcement authorities are cooperating in an investigation, as here, the knowledge of one is presumed shared by all." Illinois v. Andreas, 463 U.S. 765, 771-72 n. 5 (1983) (citing Whiteley v. Warden, 401 U.S. 560, 568 (1971)). Here, Trooper Weigel is deemed to have knowledge of the following facts: Kekich's pickup truck was travelling in close proximity to the U-Haul van, which contained a sizable quantity of marijuana; the driver of the U-Haul professed to be travelling to New Hampshire; the pickup truck bore New Hampshire license plates and was registered to a resident of Concord, New Hampshire; when the U-Haul was stopped for a traffic violation, the pickup truck continued east, something which Trooper Jimerson testified was unusual for vehicles travelling together; the operator of the U-Haul possessed two short range, hand-held C.B. walkie talkies and the pickup truck was equipped with dual C.B. antennae.

Armed with the foregoing knowledge, Trooper Weigel had probable cause to stop the pickup truck and arrest Kekich. As the Supreme Court has repeatedly held, probable cause is a

19

practical, nontechnical concept. "In dealing with probable cause, . . . as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting United States v. Cortex, 449 U.S. 411, 418 (1981)). It was objectively reasonable for a law enforcement officer with access to the knowledge imputed to Trooper Weigel to conclude that it was more probable than not that Kekich was involved in the unlawful interstate transportation of a controlled substance. See, e.g., United States v. Figueroa, 818 F.2d 1020, 1023 (1st Cir. 1987) ("[T]he constitutionality of a warrantless arrest `depends . . . upon whether, at the moment the arrest was made, the officers had probable cause to make it -- whether at that moment the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent [person] in believing that the [defendant] had committed or was committing an offense.'") (quoting Beck v. Ohio, 379 U.S. 89, 91 (1964).

Having arrested Kekich on probable cause and subsequently detecting the unmistakable odor of marijuana coming from the rear of the truck, Trooper Weigel could properly search the pickup truck for controlled substances under the "automobile exception" to the warrant requirement. United States v. Ross, 456 U.S. 798 (1982); Carroll v. United States, 267 U.S. 132 (1925). See United States v. McCoy, 977 F.2d 706, 710 (1st Cir. 1992) ("Under the `automobile exception,' the only essential predicate for a valid warrantless search of a motor vehicle by law enforcement officers is `probable cause to believe that the [vehicle] contains contraband or other evidence of criminal activity.'" (citation omitted)); United States v. Maguire, 918 F.2d 254, 260-61 (1st Cir. 1990) (generally discussing the scope and application of the "automobile exception" to the warrant requirement.), cert. denied, 499 U.S. 950 (1991).

Finally, because the searches of the U-Haul and the Dodge pickup were constitutionally permissible, Levesque's argument that the subsequent searches of his home, barn, garage, and vehicles were "fruit of the poisonous tree" is unfounded.

**Conclusion.**

21

For the foregoing reasons, Boisvert's Motion to Suppress (document no. 34) is denied.[4] Even assuming that he has standing to challenge the constitutionality of the searches and seizures, Levesque's Motions to Suppress I through IV (documents nos. 36-39) are denied.

---

[4] Defendant Boisvert failed to appear at the continuation of the suppression hearing. No explanation for his absence was provided and the court concluded that he absented himself voluntarily and waived his right to be present. United States v. Dalli, 424 F.2d 45, 48 (2nd Cir.) ("Although a defendant has a right to be present at a suppression hearing where testimony is to be taken, this right is not absolute and may be relinquished by acts or statements of the defendant which constitute a voluntary waiver."), cert. denied, 400 U.S. 821 (1970). See generally, C. Bello, Annotation, Right of Accused to Be Present at Suppression Hearing, 23 A.L.R.4th 955, §6a (collecting cases).

Accordingly, the hearing continued to conclusion in his absence and the court issued a warrant for his apprehension. Should Boisvert offer justification for his absence, the court will reconsider his motion in light of any additional evidence or argument he may wish to present that was not presented due to his absence.

SO ORDERED.

_____
Steven J. McAuliffe
United States District Judge

July 11, 1995

cc:  Martin J. Bender, Esq.
     Paul J. Garrity, Esq.
     United States Marshal
     United States Attorney
     United States Probation